**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Jose Bernardo BARRAGAN, Terran Hober Luis Carabaio,**
**Defendants-Appellants.**

**No. 85–5072**
**Non-Argument Calendar.**

United States Court of Appeals,
Eleventh Circuit.

July 18, 1986.

Blas E. Padrino, Coral Gables, Fla., for Barragan.

John D. Lazarus, Miami, Fla., for Carabaio.

Leon Kellner, U.S. Atty., Jeffrey Fisher, Asst. U.S. Atty., Miami, Fla., for the U.S.

Before FAY, JOHNSON and CLARK, Circuit Judges.

PER CURIAM:

Appellants Jose Bernardo Barragan and Teran Hober Luis Carabaio were convicted of conspiracy to possess marijuana with intent to distribute, and of possession of marijuana with intent to distribute. On appeal, Barragan challenges his conviction and Carabaio challenges his sentence. We AFFIRM.

## I. BACKGROUND

In May 1984, the Coast Guard Cutter LIPAN was on patrol in the Bahamas' Northwest Providence Channel, which is in international waters. Personnel on board the LIPAN sighted the motor vessel LANEY–C, a 96-foot oil-rig vessel, about 17 miles off the coast of the Bahamas. The LANEY–C displayed no flag, and no home port was inscribed on the vessel. Coast Guard personnel recognized the LANEY–C as a vessel which was on a Coast Guard list of vessels suspected of carrying illegal drugs.

The Coast Guard cutter established communication with the LANEY–C in Spanish through an interpreter. This type of communication was routinely recorded in the radio room of the Coast Guard cutter. The interpreter asked the nationality and home port of the LANEY–C. Appellant Barragan, the spokesman on board the LANEY–C, initially responded "Venezuela," and then changed his answer to "the United States." When asked the captain's name and date of birth, Barragan gave no response. The question was repeated, and Barragan stated that the captain had gotten off the boat in Aruba. Barragan said that he did not know the location of the ship's home port in the United States. He stated that the boat had come from Aruba and was headed for Freeport in the Bahamas.

Coast Guard personnel directed Barragan to stand by for boarding. He then stated that the vessel's registration had been left in Aruba. He said that the LANEY–C had no cargo, and that there were no below deck compartments. He also said that there were no weapons on board the vessel. The Coast Guard interpreter directed that the crew of the LANEY–C gather at the rear of the vessel with their identification.

A five-man boarding party, led by Officer Robert Martin Webber, went aboard the vessel. Webber asked who was the captain. Barragan stepped forward and stated that the captain was not on board, but that he was in charge. Barragan produced the passports of the other crew members. However, he stated that his own passport, along with the vessel registration and documents, had been lost in Aruba.

Subsequently, members of the boarding party conducted a security sweep of the vessel. In the course of the sweep, one of the Coast Guard officers smelled the odor of marijuana coming from a vent adjacent to a manhole cover. Coast Guard personnel removed the manhole cover and discovered bales of marijuana. Further search revealed about 20 tons of marijuana, and no other cargo, on board the LANEY–C. At trial, the parties stipulated that the LANEY–C was a United States vessel.

The Coast Guard officials seized the LANEY–C, placed the crew under arrest, and advised the crewmembers of their rights. On board the LANEY–C, Coast Guard officials discovered notes and navigational charts. These notes and charts indicated that the LANEY–C had departed from Colombia 11 days prior to the seizure, and that it was taking a circular course leading to a position near Freeport.

On June 7, 1984, appellants and the five other crew members of the LANEY–C were indicted in the United States District Court for the Southern District of Florida. Appellants were charged with conspiracy to possess marijuana with intent to distribute, in violation of 21 U.S.C.A. § 955c; and with possession of marijuana with intent to distribute, in violation of 21 U.S.C.A. § 955a(a) and 18 U.S.C.A. § 2.

A motion to dismiss the indictment based on the Speedy Trial Act was denied, and a bench trial was held on October 18, 1984. The trial court found all seven defendants guilty on both counts of the indictment. Appellants were each sentenced to five years imprisonment on each count, to run concurrently, and to a special parole term of five years. Appellants filed timely notices of appeal.

## II. SPEEDY TRIAL ACT CLAIM

Appellant Barragan's first claim of error is that his trial, which took place more than

seventy days after the date of his indictment, violated the Speedy Trial Act, 18 U.S.C.A. § 3161 *et seq.* Barragan claims that his indictment therefore should have been dismissed.

The Speedy Trial Act provides that, in general, a defendant who pleads "not guilty" must be tried within 70 days from the date of his indictment or from the date on which the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date occurs last. *United States v. Yunis,* 723 F.2d 795, 796 (11th Cir.1984). However, the district court may exclude from the computation of the 70-day pretrial period any period of delay resulting from other proceedings concerning the defendants. *Id.* This includes "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion." 18 U.S.C.A. § 3161(h)(1)(F). Both the date on which an event occurs or a motion is filed and the date on which the court disposes of a motion are excluded from the computation of the 70-day period. *Yunis, supra,* at 796. In addition, the dates of the indictment and arraignment are excluded. *Id.*

Appellants appeared before the court on May 30, 1984; however, they were not indicted until June 7, 1984. Therefore, the 70-day period must be calculated from the date of their indictment. *Id.* On July 27, 1984, the Government filed a motion for continuance and exclusion from the Speedy Trial Act, based on the fact that the Coast Guard officers who were to be witnesses were on sea duty. The Government requested a continuance beginning on August 6, 1984, and ending on any date between August 16 and September 14, 1984, during which time the Coast Guard witnesses would be in port. Prior to the time the motion for continuance was filed, 48 days had elapsed for purposes of the Speedy Trial Act period. On August 2, 1984, the defendants filed a response to the Government's motion.

The trial court never explicitly ruled on the motion for continuance. However, on August 15, 1984, the trial court issued notice that trial would be held during the two-week period commencing September 4, 1984. By issuing this notice the court in effect granted the requested continuance covering the period between August 15 and September 4, 1984.

■ The period from July 27 to August 2, 1984, was excludable from the 70-day period as delay attributable to the filing of a pretrial motion. 18 U.S.C.A. § 3161(h)(1)(F). The period from August 2 to August 15, 1984, during which time the trial court had not disposed of the Government's motion for continuance, was excludable from the 70-day period under 18 U.S.C.A. § 3161(h)(1)(J). That section provides for the exclusion of up to 30 days during which a motion is under advisement by the court. *See United States v. Stafford,* 697 F.2d 1368, 1373–74 (11th Cir.1983).

■ Under 18 U.S.C.A. § 3161(h)(3)(A), periods of delay "resulting from the absence or unavailability of the defendant or an essential witness" are also excludable from the 70-day period. A witness is "unavailable," within the meaning of that subparagraph, if his whereabouts are known but his presence for trial cannot be obtained by due diligence. 18 U.S.C.A. § 3161(h)(3)(B). In the instant case, the fact that the Coast Guard witnesses were on sea duty during August 1984 rendered them "unavailable" during the time they were on duty. The unavailability of the Coast Guard witnesses was the reason the Government requested and was granted the continuance between August 15 and September 4, 1984. Because this period of delay resulted from the unavailability of essential witnesses, it is excludable from the 70-day period. Accordingly, the 70-day Speedy Trial Act period was tolled for the entire time between and including July 27 and September 4, 1984.

■ On September 20, 1984, one of the co-defendants filed a motion to dismiss the indictment based on the Speedy Trial Act.

The filing of this motion once again tolled the 70-day period for that co-defendant. *Stafford, supra,* at 1372–73 (filing of motion to dismiss for violation of Speedy Trial Act tolls Speedy Trial Act period). The motion also tolled the 70-day period for appellant, since the delay caused by one co-defendant is excludable as to his co-defendants. *Id.* at 1372. At the time the motion was filed, 63 non-excludable days had elapsed since the date of the indictment.

On October 18, 1984, the date that appellant Barragan's trial began, the trial court denied the motion to dismiss based on the Speedy Trial Act. Because only 63 non-excludable days elapsed between the date of the indictment and the date of the trial, we hold that there was no violation of the Speedy Trial Act.

## III. EVIDENTIARY CLAIM

■ Appellant Barragan's second claim is that the trial court committed reversible error in permitting Coast Guard Officer Herman Plaza to testify about his radio conversation with Barragan prior to the boarding of the LANEY–C by the Coast Guard. Barragan contends that this testimony should have been barred because, although the court ordered the Government to give to Barragan any written or recorded statements made by him, the Government failed to provide him with a tape recording of his conversation which the Government had made. Barragan also contends that, by failing to produce the tape recording, the Government violated Fed.R. Crim.P. 16(a)(1)(A), the Standing Discovery Order of the Southern District of Florida, and the requirements of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

The Government contends that tape recordings of the type made of the radio conversation are routinely destroyed after they are transcribed. The Government also claims it provided Barragan with a transcription of the recording prior to trial. Finally, the Government contends that, after the Coast Guard had boarded the LA-

NEY–C, Barragan repeated virtually all the statements he had made over the radio. The only statement which Barragan did not repeat was the statement that the LANEY–C was a United States vessel.

This Court will not reverse a conviction based on a violation of Fed.R.Crim.P. 16(a)(1)(A) unless the appellant demonstrates that the violation prejudiced his substantial rights. *See United States v. Rodriguez,* 765 F.2d 1546, 1557 (11th Cir. 1985). Likewise, we will require a showing of prejudice before we reverse a conviction based on a violation of the Standing Discovery Order of the Southern District of Florida, which is modeled after Rule 16(a)(1)(A). In determining whether substantial prejudice exists, this Court considers whether the defendant was unduly surprised and did not have an adequate opportunity to prepare a defense, or whether the mistake had substantial influence on the jury. *Id.*

We conclude that appellant Barragan completely fails to show that he was prejudiced by the Government's failure to turn over the tape recording of his radio conversation with the Coast Guard. Barragan's participation and role in the crime were clearly established by his statements to Coast Guard personnel after they boarded the LANEY–C. Although Barragan contends that the radio conversation was crucial to establishing his knowledge of the vessel's nationality, such knowledge is not required to prove the crimes with which Barragan was charged.

■ To establish a *Brady* violation requiring reversal of a conviction, appellant must show (1) that the prosecution has suppressed evidence, (2) that such evidence was favorable to the appellant or was exculpatory, and (3) that the evidence was material. *United States v. Bent-Santana,* 774 F.2d 1545 (11th Cir.1985). Evidence is "material" if there is a reasonable probability that, but for the failure to produce such evidence, the outcome of the case would have been different. *United States v. Bagley,* — U.S. ——, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). For the reasons dis-

cussed above, we hold that appellant Barragan fails to meet his burden of showing that the tape recording of his radio conversation with the Coast Guard was material. Thus, Barragan cannot prevail on his *Brady* claim.

## IV. SUFFICIENCY CLAIM

■ Appellant Barragan's third and final contention is that the evidence at trial was insufficient to support his conviction. In the instant case, the evidence showed that Barragan was in charge of a vessel that had taken a 10-day, circular voyage, originating in Colombia. At the time of the arrest, the vessel was carrying about 20 tons of marijuana and no other cargo. The evidence was sufficient to support Barragan's conviction on both counts with which he was charged. *See United States v. Cruz-Valdez,* 773 F.2d 1541 (11th Cir.1985) (en banc).

## V. DUE PROCESS IN SENTENCING CLAIM

■ Appellant Carabaio raises only one issue in this appeal: whether the length of his sentence violated due process. In fixing sentences for the various defendants, the district court distinguished between those who had no prior involvement with marijuana boats and those who had such prior involvement. The first offenders were sentenced to prison terms of eighteen months, while those with prior offenses were sentenced to terms of five years. Following conviction, the court instructed the defendants to cooperate with the presentence investigation. In answer to questions posed by the Probation Officer, and on advice from counsel, Carabaio volunteered that he had been previously arrested on a marijuana boat and incarcerated for five months. Aside from the information provided by Carabaio, the Probation Officer had no record of the prior conviction available. Carabaio contends that this information was unreliable and unfairly obtained, and thus should not have been permitted to form the basis for the five year sentence.

If an appellant can show that challenged evidence was materially false or unreliable, and that it actually served as the basis for the sentence imposed upon appellant, he can make out a due process violation. *United States v. Reme,* 738 F.2d 1156 (1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 2334, 85 L.Ed.2d 850 (1985). The Government concedes that the trial court based Carabaio's sentence on the information that he was a prior offender. However, Carabaio completely fails to meet his burden of showing that this information was unreliable. On the contrary, the circumstances of his admission—made under advice of counsel—make it very reliable.

Appellant's contention that the admission was unfairly obtained is also completely without merit. When asked to cooperate with the Probation Officer, Carabaio had to weigh the damage that might occur as the result of his candid admission of the prior conviction against the risk that his failure to be truthful would be discovered. There was no compulsion on appellant to supply the information about his prior conviction, other than the fact that his failure to be truthful in the information provided to the sentencing court might be discovered. This case is distinguishable from *Estelle v. Smith,* 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981), where a defendant submitted to a psychiatric examination which resulted in a determination that the defendant was a future threat to society. In the instant case, unlike *Estelle,* appellant cooperated with the Government on advice of counsel. In short, there was nothing unfair about the court's asking for appellant's cooperation prior to sentencing in this case, and therefore no violation of due process.

The judgments and sentences of the district court are AFFIRMED.