865 F.2d 1269
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Carl Edward LOCKHART, a/k/a Cateyes Lockhart, Defendant-Appellant.
 No. 88-5338.
 United States Court of Appeals, Sixth Circuit.
 Jan. 13, 1989.
 
 Before WELLFORD and DAVID A. NELSON, Circuit Judges, and RICHARD B. McQUADE, Jr., District Judge.*
 PER CURIAM.
 
 
 1
 A federal jury found defendant Carl Edward Lockhart guilty of armed bank robbery and related offenses. Mr. Lockhart moved for a new trial, contending that the court ought not to have admitted into evidence the substance of an oral statement that had not been disclosed prior to trial pursuant to a Rule 16 request. The court denied the motion, and the case has come to us on direct appeal. Believing that any error in failing to disclose the statement was harmless, we shall affirm the conviction.
 
 
 2
 * * *
 
 
 3
 * * *
 
 
 4
 On September 10, 1987, a lone male robber entered the Ferrells Creek branch of the First National Bank of Pikeville, Kentucky. The robber brandished a sawed-off shotgun and wore a "toboggan" mask over his face. The robber directed the tellers to fill a pillowcase with money. One teller contributed a packet of about 100 two-dollar bills and a dye pack.
 
 
 5
 A bank employee saw the robber leave the bank and enter a white van, which abruptly departed. The employee followed the van until it turned onto a gravel road. A small gray compact car was later seen coming out of the gravel road and turning onto the main road. Meanwhile, hearing about the robbery on a police scanner, a mechanic left the garage where he was working and went outside to look for the van. He observed a gray four-door Dodge Colt being driven faster than usual. The Colt was traveling on the same highway as that used by the van, and was going in the same direction.
 
 
 6
 Before the robbery another citizen had seen the van and the Colt parked together not far from the bank. This witness testified that there were two males and one female in the Colt; no one was visible in the van. The witness also saw the vehicles moving in tandem toward the bank about ten minutes before the robbery.
 
 
 7
 The van was found parked on the gravel road about fifteen minutes after the robbery. Inside were a shotgun and money stained by red dye.
 
 
 8
 The next day an FBI agent was summoned to Buchanan County, Virginia, to examine a gray four-door Dodge Colt that had been abandoned near a farmhouse. The Colt, which resembled the car seen near the bank, belonged to defendant Lockhart.
 
 
 9
 On September 17, 1987, one week after the robbery, a man fitting Mr. Lockhart's description entered the Pikeville National Bank to exchange $172 in two-dollar bills for other bills. Some of the two-dollar bills had red dye on them. Mr. Lockhart was soon arrested and interviewed by an FBI agent. A bank teller and supervisor identified Mr. Lockhart as the person who had exchanged the two-dollar bills. Mr. Lockhart told the agent that he had sold a stereo to an individual named Bishop at a roadside stand near Belfry, receiving the two-dollar bills in payment. He also told the agent that he did not know who had his Dodge Colt on the day of the robbery.
 
 
 10
 A preliminary hearing was held on September 24. Mr. Lockhart's lawyer was present. The FBI agent who had interrogated Mr. Lockhart testified that Mr. Lockhart "made many statements. He told me that he received the two dollar bills from selling a stero and he received it from an individual who was selling and buying stuff on the side of the road in Belfry by the name of Bishop."
 
 
 11
 * * *
 
 
 12
 * * *
 
 
 13
 In response to a pretrial motion by the defendant, the district court ordered the government to provide the defendant materials discovery of which is authorized by Rule 16, Fed.R.Crim.P. Rule 16 provides that
 
 
 14
 "[u]pon request of a defendant the government shall permit the defendant to inspect ... the substance of any oral statement which the government intends to offer in evidence at the trial made by the defendant whether before or after arrest in response to interrogation by any person then known to the defendant to be a government agent...."
 
 
 15
 The government did not furnish the defendant anything in response to the Rule 16 order.
 
 
 16
 In his opening statement at trial defense counsel indicated that Mr. Lockhart would testify that (1) he obtained the two-dollar bills from two strangers for work done on their Cadillac; (2) he lent his car to the strangers while he worked on their vehicle; (3) he worked on the Cadillac on Wednesday and Thursday, September 9 and 10, 1987; and (4) the two men returned his car on Thursday afternoon, at which time Mr. Lockhart received the two-dollar bills.
 
 
 17
 Mr. Lockhart later testified along the lines outlined by his attorney. On cross-examination the government impeached this testimony by using Mr. Lockhart's prior inconsistent statements to the FBI agent. Defense counsel objected and moved for a mistrial after Mr. Lockhart was asked whether he had not told the FBI agent that he had no idea who had his Dodge Colt on September 10.
 
 
 18
 At an ensuing bench conference the prosecutor explained that he understood Rule 16 to provide for discovery of the substance of oral statements only if the government intended to use the statements in its case in chief. The prosecutor also intimated that the defendant's attorney had been made aware of the substance of Mr. Lockhart's statements at the preliminary hearing. The attorney responded "I am ninety-nine percent sure that there was never any testimony about who, if anyone, had the car on September 10th.... I definitely do not recall half of this stuff being on there." The court denied the motion for mistrial. At the conclusion of the trial the jury returned a verdict of guilty as to four counts of the indictment.
 
 
 19
 * * *
 
 
 20
 * * *
 
 
 21
 The government urges us to follow United States v. Panas, 738 F.2d 278 (8th Cir.1984), where it was held that Rule 16 does not provide for the discovery of oral statements unless the government intends to use them in its case in chief. We need not reach this question, however, because Mr. Lockhart was not prejudiced by the government's failure to respond to his Rule 16 request in any event.
 
 
 22
 Failure to comply with Rule 16(a) is subject to the harmless error rule. See United States v. Barragan, 793 F.2d 1255, 1259 (11th Cir.1986); United States v. Rossetti, 768 F.2d 12, 15 (1st Cir.1985); United States v. Reed, 724 F.2d 677, 680 (8th Cir.1984); United States v. Bledsoe, 674 F.2d 647 (8th Cir.), cert. denied sub nom. Phillips v. United States, 459 U.S. 1040 (1982); United States v. DeWeese, 632 F.2d 1267, 1272 (5th Cir.1980), cert. denied, 454 U.S. 878 (1981); United States v. Jensen, 608 F.2d 1349, 1357 (10th Cir.1979). Under the rule, "[a]ny error, defect, irregularity or variance which does not affect substantial rights shall be disregarded." Fed.R.Crim.P. 52(a). If the error is not of constitutional dimension, it "is harmless unless it is more probable than not that the error materially affected the verdict." United States v. Neuroth, 809 F.2d 339, 342 (6th Cir.), cert. denied, 107 S.Ct. 3190 (1987); accord United States v. Bailleaux, 685 F.2d 1105, 1115 (9th Cir.1982).
 
 Mr. Lockhart suggests that
 
 23
 "[h]ad the statement been disclosed either prior to trial or immediately after the opening statement for the defense, when it was apparent to the government that they would use the statement to impeach Mr. Lockhart, then defense counsel would have had the opportunity to discuss with his client the circumstances surrounding the oral statements and obtain his explanation as to any inconsistency between the original statements and his testimony at trial. Defense counsel could have even chose [sic] not to call Mr. Lockhart to the stand. With absolutely no indication that said statements were going to be brought out during cross-examination, defense counsel was totally unprepared and unable to address those statements since there had been no prior discussion with the Defendant about them."
 
 
 24
 Mr. Lockhart's attorney was present at the preliminary hearing, however, and the record indicates that at that hearing the FBI agent testified that Mr. Lockhart had told the agent that he obtained the two-dollar bills by selling a stereo to an individual named Bishop at a roadside stand in Belfry. The possibility that Mr. Lockhart's credibility might be questioned if he should testify that he obtained the bills in payment for car repairs thus ought to have presented itself to defense counsel, just as it presumably would have done if the story had been disclosed pursuant to Rule 16. Failure to disclose a story that the defendant's lawyer already knew about can hardly be said to affect the defendant's substantial rights.
 
 
 25
 Mr. Lockhart argues that he was prejudiced by the government's failure to disclose that he had previously disclaimed knowledge of the whereabouts of his car on the day of the robbery. But the purported loan of the Colt to the Cadillac owners was part and parcel of Mr. Lockhart's explanation of where the two-dollar bills came from. Defense counsel knew, or ought to have known, that the government would attack the whole story. What the jury believed as to who had possession of the Dodge Colt on the day of the robbery would depend primarily on whether the jury believed Mr. Lockhart's account of how he obtained the two-dollar bills. If it was error to let the government impeach Mr. Lockhart's testimony regarding the whereabouts of his Colt on September 10, we are satisfied that the error did not affect the jury's verdict. See also United States v. Holloway, 740 F.2d 1373, 1381 (6th Cir.) (indicating that divulging the substance of the defendant's oral statements will suffice), cert. denied, 469 U.S. 1021 (1984).
 
 
 26
 The defendant also claims that the verdict was not supported by sufficient evidence. There was abundant circumstantial evidence linking Mr. Lockhart to the crime, however, including, in addition to that described above, eyewitness testimony from the bank tellers to the effect that the gunman who entered the Ferrells Creek bank on September 10, 1987, had distinctive physical traits of the same sort that Mr. Lockhart has.
 
 
 27
 AFFIRMED.
 
 
 
 *
 The Honorable Richard B. McQuade, Jr., United States District Judge for the Northern District of Ohio, sitting by designation