UNITED STATES of America, Plaintiff–Appellee,

v.

Ricardo Elias CAMARGO–VERGARA, Antonieta Maria Sanchez, Santos Efrain Dominguez, Defendants–Appellants.

No. 92–4159.

United States Court of Appeals, Eleventh Circuit.

July 25, 1994.

---

Manuel Gonzalez, Jr., Miami, FL, for Camargo–Vergara.

Lydia Ann Fernandez, Miami, FL, for Sanchez.

Marc S. Nurik, Ft. Lauderdale, FL and Jeffrey D. Feldman, McDermott, Will & Emergy, Miami, FL, for Dominguez.

James W. McAdams, III, U.S. Atty. and Jeffrey H. Sloman, Asst. U.S. Atty., Miami, FL, for appellee.

Before HATCHETT and EDMONDSON, Circuit Judges, and MELTON *, Senior District Judge.

* Honorable Howell W. Melton, Senior U.S. District Judge for the Middle District of Florida, sitting by designation.

HATCHETT, Circuit Judge:

In this cocaine conspiracy case, we affirm the convictions and sentences of two of the appellants, but reverse the convictions and vacate the sentences of the remaining appellant.

## FACTS

On April 26, 1991, law enforcement officers arrested Santos Dominguez, Ricardo Camargo–Vergara, and Antonieta Sanchez in connection with the importation of cocaine and conspiracy to possess with intent to distribute 212 kilograms of cocaine.

Two confidential informants for the Drug Enforcement Administration, Alfredo Ferrerio and "Mr. J.," posed as drug traffickers and negotiated with Oscar Fontalvo, a codefendant in this case, to import 212 kilograms of cocaine into the United States from Colombia.

Camargo–Vergara, Fontalvo's frequent companion, participated in several discussions with Fontalvo and the informants concerning the impending drug importation. Camargo–Vergara offered to help with the delivery, storage, and sale of the cocaine. Additionally, he presented suggestions on how to transport the contraband and volunteered to procure a place to store it.

On April 23, 1991, an undercover DEA agent, Willy Hernandez, posing as the drug courier, met with Fontalvo and Camargo–Vergara and told them that 212 kilograms of cocaine had successfully arrived via boat in the United States and were hidden in a safe place. The agent promised that he would not deliver the cocaine until he received payment. During the conversation, Camargo–Vergara inquired as to whether Hernandez was a police officer.

After the meeting, Fontalvo called a Colombian drug trafficker and told him he needed money to have the courier release the cocaine. The Colombian drug trafficker referred Fontalvo to a person later identified as Santos Dominguez. Fontalvo called Dominguez and arranged to meet him at a local supermarket. Dominguez told Fontalvo that he had a moustache and would be driving a white Lexus.

At the designated time, Dominguez, drove to the supermarket in a white Lexus but became suspicious that agents were monitoring the area and consequently left without meeting Fontalvo. When Fontalvo later notified his Colombian associate that he failed to meet Dominguez, Fontalvo was referred to Antonietta Sanchez.

Fontalvo met Sanchez and they developed a plan to assuage Dominguez's suspicion. Sanchez, a trusted associate of a Colombian drug trafficker, agreed to operate as a middleperson between Fontalvo and Dominguez. Sanchez agreed to loan Fontalvo her car so Fontalvo could load it with cocaine and return it to her. Sanchez would then deliver the 212 kilograms of cocaine in two equal installments to Dominguez in exchange for approximately $1 million and return the payment to Fontalvo.

Hernandez, the drug courier, agreed with the plan and arranged for the government to load Sanchez's car with approximately 50 kilograms of sham cocaine, packaged to look like true cocaine. The false cocaine differed from genuine cocaine, however, in that when packaged the sham cocaine felt softer than true cocaine. The DEA also sprayed the cocaine packages with a special rub-off chemical that reacts to ultraviolet light, thereby identifying persons who handled the cocaine.

A second undercover agent drove the sham cocaine-laden car back to pick up Camargo–Vergara and Fontalvo. Law enforcement agents arrested Fontalvo and Camargo–Vergara shortly thereafter when Camargo–Vergara noticed that government agents were following them.

After these arrests, the government continued the charade and returned the car to Sanchez for delivery to Dominguez. Sanchez then drove the car to an underground parking garage where she met Dominguez. Dominguez removed the footlockers from the car and accompanied Sanchez upstairs to a vacant apartment. In a post-arrest statement, Sanchez stated that Dominguez then opened the footlockers, felt the sham cocaine, and said, "I don't want this, take it away. The kilos feel strange. Give it back to the people who gave it to you."

Government agents arrested Dominguez and Sanchez separately, when they drove out of the parking garage in their respective cars.

The government asserts that Dominguez admitted in a post-arrest statement to DEA Agent Cynthia Schultz that "he had touched the kilos inside the trunk. He said they were strange." Similarly, the chemical on the kilogram-sized packages rubbed off on Dominguez. Agents also discovered in Dominguez's car a piece of paper inscribed with the name and phone number of a Colombian drug trafficker which matched a page out of the note pad taken from Sanchez at the time of her arrest.

## PROCEDURAL HISTORY

On December 12, 1991, a jury convicted Dominguez and Camargo of importation of cocaine, conspiracy to possess with intent to distribute, and possession with intent to distribute cocaine. A jury also convicted Sanchez of conspiracy to possess with intent to distribute cocaine.

## CONTENTIONS OF THE PARTIES

Camargo-Vergara and Sanchez argue that the evidence is insufficient to support their convictions. Camargo-Vergara further argues that the district court clearly erred in refusing to reduce his offense level pursuant to the United States Sentencing Guidelines for minimal participation in the offense.

Dominguez argues that the district court abused its discretion in denying his motions for severance and mistrial, and in providing improper instructions to the jury. Dominguez also argues that the evidence was insufficient to sustain his convictions for conspiracy to import cocaine, importation of cocaine, and conspiracy to possess with intent to distribute cocaine. Dominguez also complains that the sentencing court improperly applied the Sentencing Guidelines.

## ISSUES

The appellants present the following issues for our review:

(1) whether the evidence was sufficient to support the their convictions;

(2) whether the district court clearly erred in refusing to reduce Camargo-Vergara's offense level for minimal participation in the offense;

(3) whether the district court abused its discretion in denying Dominguez's motions for severance and mistrial;

(4) whether the district court abused its discretion in instructing the jury; and

(5) whether the district court improperly sentenced Dominguez under the Sentencing Guidelines.

## DISCUSSION

A. Camargo-Vergara

1. Sufficiency of the Evidence

Camargo-Vergara challenges the sufficiency of the evidence supporting his conviction for conspiracy to possess with intent to distribute cocaine. He argues that the trial evidence failed to prove his knowledge of the conspiracy. He further argues that his intoxication during certain relevant events negated the finding that he harbored specific criminal intent.

To determine whether sufficient evidence supports a conviction, this court must view the evidence in the light most favorable to the government and determine whether a reasonable fact finder could conclude that the defendant was guilty beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *United States v. Herrera*, 931 F.2d 761, 762 (11th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1588, 118 L.Ed.2d 306 (1992).

■ Upon a review of the record, we find that the evidence sufficiently supported Camargo-Vergara's conviction. Camargo accompanied Fontalvo to nearly every significant event leading to his arrest. For example, he was present at and even participated in several drug negotiations. He also offered suggestions on how to transport and store the cocaine. Finally, he actively participated in the attempted delivery of the cocaine. Viewed in the light most favorable to the

government, this evidence could lead a reasonable fact-finder to conclude that Camargo–Vergara harbored the requisite knowledge and specific intent for conspiracy to possess with intent to distribute cocaine. *See United States v. Cruz–Valdez,* 773 F.2d 1541, 1547 (11th Cir.1985) (improbable that drug traffickers would entrust outsider with large amounts of narcotics), *cert. denied, Ariza–Fuentes v. United States,* 475 U.S. 1049, 106 S.Ct. 1272, 89 L.Ed.2d 580 (1986); *United States v. Bain,* 736 F.2d 1480, 1485 (11th Cir.1984) (presence and association with drug traffickers is a material factor upon which a fact-finder may rely in reaching a verdict); *United States v. Collins,* 779 F.2d 1520, 1529–30 (11th Cir.1986) (presence with other circumstances can provide bases for guilty verdict).

## 2. Application of the Sentencing Guidelines

Camargo argues that, even if this conviction is upheld, he was the least culpable of all the appellants because he knew nothing about the drug transaction. Accordingly, he believes the district court clearly erred in failing to reduce his offense for minimal participation in the offense, pursuant to U.S.S.G. § 3B1.2.

■ A district court's determination of a defendant's role in an offense is a finding of fact subject to review only for clear error. *United States v. Taxacher,* 902 F.2d 867, 873 (11th Cir.1990), *cert. denied,* 499 U.S. 919, 111 S.Ct. 1307, 113 L.Ed.2d 242 (1991); *United States v. Forbes,* 888 F.2d 752, 754 (11th Cir.1989). Moreover, the appellant bears the burden of proving the applicability of a particular Sentencing Guidelines section which would reduce the offense level. *United States v. Wilson,* 884 F.2d 1355, 1356 (11th Cir.1989).

We conclude that the district court did not clearly err in refusing to reduce Camargo–Vergara's offense level for minimal participation in the conspiracy.

## B. Sufficiency of the Evidence Supporting Sanchez's Conviction

Sanchez also contends that insufficient evidence supported her conviction for conspiracy to possess cocaine with the intent to distribute. She argues that the evidence failed to establish her knowledge of or intent to participate in a conspiracy to possess with the intent to distribute cocaine.

■ Sanchez's argument can not prevail. The government elicited testimony that Sanchez agreed to serve as an agent for Dominguez and transport the 212 kilograms of cocaine to Dominguez in exchange for approximately one million dollars. Law enforcement officers arrested Sanchez as she carried out this criminal mission. Viewed in the light most favorable to the government, the evidence sufficiently supports the jury's determination that Sanchez knowingly participated in the conspiracy to possess with the intent to distribute cocaine.

## C. Dominguez's Motion for Mistrial

Dominguez contends that the district court abused its discretion in refusing to grant his motion for a mistrial. He argues that the district court improperly allowed a government witness to testify concerning an alleged post-arrest statement that the government withheld from him prior to trial, in violation of Fed.Rule Crim.P. 16(b) and the district court's standing discovery order.

Federal Rule of Criminal Procedure 16(b) and the district court's standing discovery order imposed a duty on the government to disclose Dominguez's post-arrest statements made in response to any government agent's interrogation that the government intended to use at trial. Prior to trial, the government only disclosed to Dominguez's lawyer the following post-arrest statement made to DEA Agent Cynthia Schultz:

> When asked about the foot lockers that Sanchez had, Dominguez said that he had looked inside them and that they contained "kilos." He said that he didn't want anything to do with them. Dominguez also said that he had touched the kilos in the footlocker.

Based on this disclosure, Dominguez's lawyer prepared a trial strategy emphasizing that Dominguez's statements clearly revealed that he "didn't want anything to do with" the cocaine that Sanchez offered to him and

properly told her to take it away. Thus, at the beginning of trial, Dominguez's lawyer made the following opening statement:

> No, no, I don't want it. No, no way. These will be the words that you will hear out of the mouth of my client, Santos Dominguez.... When Santos Dominguez, at the very tail end of this thing, was offered to buy what was believed to be fifty kilograms of cocaine by someone else, because they needed to find a buyer, he said, no. Just say no.... [T]hat person was told to leave, and left the apartment building with the supposed cocaine in the trunk.

Yet, during the government's direct examination, Agent Schultz revealed for the first time that Dominguez said "[t]hat he had touched the kilos inside the trunk" and *"said they were strange."* (Emphasis added.)

Dominguez moved for a mistrial alleging that the government committed a discovery violation because it failed to disclose prior to trial that Dominguez said that the kilos were strange.

A discovery violation under rule 16(a)(1)(A) or a standing discovery order is reversible error only when it violates a defendant's substantial rights. *See United States v. Rivera,* 944 F.2d 1563, 1566 (11th Cir.1991); *United States v. Silien,* 825 F.2d 320, 323 (11th Cir.1987); *United States v. Barragan,* 793 F.2d 1255, 1259 (11th Cir. 1986). Substantial prejudice exists when a defendant is unduly surprised and lacks an adequate opportunity to prepare a defense or if the mistake substantially influences the jury. *United States v. Rivera,* 944 F.2d at 1566; *United States v. Barragan,* 793 F.2d at 1259. Inadvertence does not render a discovery violation harmless; rather, the purpose of rule 16 is to protect a defendant's right to a fair trial rather than to punish the

government's non-compliance. *United States v. Noe,* 821 F.2d 604, 607 (11th Cir.1987); *United States v. Rodriguez,* 799 F.2d 649, 654 (11th Cir.1986); *United States v. Padrone,* 406 F.2d 560, 560–61 (2d Cir.1969).

Upon a review of the record, we hold that the government substantially prejudiced Dominguez's defense when it failed to disclose that Dominguez told Agent Schultz that the kilos were strange. First, as announced in his opening statement, Dominguez's lawyer intended to use the government's previously disclosed post-arrest statements to convince the jury that Dominguez had no experience with and wanted nothing to do with the proffered kilos of cocaine. Yet, Agent Schultz's trial testimony that Dominguez said the kilos were "strange" after touching them, shattered this defense because a person would not know a kilo of cocaine felt strange unless the person had some experience with the feel of true packages of cocaine. Moreover, the government drove home this inference in its closing argument.[1]

Second, Agent Schultz's testimony unexpectedly corroborated Sanchez's testimony that Dominguez said the kilos felt funny. Prior to trial, Dominguez motioned to sever his trial from Sanchez's trial because she planned to testify that "Dominguez stated that the kilos felt funny." [2] In response, the government promised not to elicit testimony from Sanchez concerning that statement. Thus, the government led Dominguez to believe that the government would not corroborate Sanchez's trial testimony that Dominguez told her the "kilos felt funny."

Based on the government's assurances and Dominguez's recorded post-arrest statement, Dominguez planned to impeach Sanchez if she testified that Dominguez said the kilos felt funny. Nevertheless, Agent Schultz's testimony eroded the effectiveness of this trial strategy when she unexpectedly testi-

---

1. In closing argument the prosecutor stated "it's clear why he wanted nothing to do with [the cocaine] ... for whatever reason, he believed that there was something wrong with the fake cocaine."

2. Dominguez argued that his trial should be severed from Sanchez's trial because the two defendants planned antagonistic trial strategies. Sanchez planned to assert that she did not know that

the footlockers she delivered to Dominguez contained cocaine. Dominguez, on the other hand, planned to argue that Sanchez knowingly delivered the cocaine to him because she knew he had a history of criminal activity. Dominguez argued that these conflicting defenses would require each defendant to attack the credibility of the other.

fied that Dominguez also said in his own post-arrest statement that the kilos "were strange." If Dominguez had known the government would present such testimony, Dominguez could have adjusted his trial strategy accordingly. For example, he could have moved to suppress the statement or he could have subpoenaed the DEA agents who recorded Dominguez's post-arrest statements to explain why their written account differed from Agent Schultz's recollection.

These facts sufficiently demonstrate under this court's precedent that the government's discovery violation substantially prejudiced Dominguez's defense. *See United States v. Noe*, 821 F.2d 604, 607 (11th Cir.1987) (nondisclosure of a tape recording was reversible error because it "attacked the very foundation of the defense strategy"); *United States v. Rodriguez*, 799 F.2d 649, 654 (11th Cir. 1986) (nondisclosure of documents was reversible error because the defendant did not have the opportunity to prepare to meet that evidence).

■ Moreover, in reaching this conclusion, we reject the government's contention that Dominguez's subsequent attempt to impeach Agent Schultz's testimony served to cure the government's discovery violation. We cannot penalize the appellant and reward the government for the appellant's reasonable attempts to mitigate the government's breach of the discovery rules.

## CONCLUSION

Thus, for the foregoing reasons, we affirm the judgment of the district court with respect to all appellants, except Dominguez, whose conviction we reverse and remand to the district court for a new trial.**

AFFIRMED in part, REVERSED in part.

---

** In light of our holding, we also find it unneces-        sary to address Dominguez's additional claims.