**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Robin O. BROWN, Thomas Edwin Cooke, Sr., James H. Lynch, Byron L. Kielmeyer, Paul Wayne Collier, Judy A. Carter, Defendants–Appellants.**

No. 91–3358.

United States Court of Appeals,
Eleventh Circuit.

Dec. 28, 1994.

Before HATCHETT and ANDERSON, Circuit Judges, and DYER, Senior Circuit Judge.

HATCHETT, Circuit Judge:

Appellants raise several claims challenging their convictions for involvement in an insurance fraud scheme. We reject all of the appellants' claims and affirm their convictions except for Byron Kielmeyer.[1] We reverse Kielmeyer's convictions, finding that the evidence against him was insufficient.

## FACTS

In December, 1986, Kielmeyer approached Donald Hindes, an owner of an insurance agency in Ohio. Kielmeyer told Hindes that he had a contact, Transportation Services, Inc. (TSI), that could give him business placing insurance applications for trucking companies. The two reached an agreement whereby Hindes sponsored Kielmeyer and covered all of his office expenses. Reciprocally, Kielmeyer split with Hindes the commissions that he received from the insurance companies for placing the TSI-generated business.

Hindes did not know, however, that Kielmeyer's contact, TSI, had masterminded a complicated scheme to defraud trucking companies, insurance companies, and the Interstate Commerce Commission. In simple terms, TSI's scheme involved submitting false applications to insurance companies, applications which significantly underrepresented the number of trucks in a given fleet.

Under their agreement, Kielmeyer generally handled all of the TSI business, although Hindes occasionally assisted him. In the course of this business, Kielmeyer received insurance applications from TSI. Often these applications falsely indicated that a company owned a single truck. Kielmeyer then placed these applications with Ohio in-

E. Brian Lang, Mann, Lang & Staples, Pensacola, FL, for Brown.

Sheldon Perhacs, Birmingham, AL, for Cooke.

Stephen E. Sutherland, Pensacola, FL, for Kielmeyer.

Stephen P. Preisser, Asst. U.S. Atty., Pensacola, FL, for appellee.

Dana C. Matthews, court-appointed, Destin, FL, for Judy Carter.

Donald S. Modesitt, court-appointed, Tallahassee, FL, for Lynch and Collier.

---

1. Specifically, appellants, Kielmeyer, Robin Brown, and Thomas Cooke raise sufficiency of the evidence claims. Judy Carter contends that the prosecutor engaged in improper conduct during closing argument. Paul Collier and James Lynch claim that the district court: (1) erroneously denied their request for a severance; (2) imposed improper time limitations denying them due process; and (3) erred in giving the jury *Pinkerton* and deliberate ignorance instructions. Finally, Lynch also claims that the district court improperly stated the law when it gave its withdrawal instruction.

surance companies. In turn, TSI paid Kielmeyer a fee in addition to the commissions that he received from the insurance companies. Thus, Kielmeyer was on the payroll of TSI; he even had a TSI business card with his name typed on it. Kielmeyer also visited the TSI headquarters in Destin, Florida on approximately three to five occasions.

Sometime in January of 1987, TSI began sending applications to be placed with insurance companies outside of Ohio. This presented a problem for Hindes and Kielmeyer because they were only licensed in Ohio, and therefore could not accept commissions on these applications. Consequently, in either late January or early February, Hindes went to Destin where he negotiated a deal in which TSI would pay $1,000 for each trucking application placed outside of Ohio. Kielmeyer and Hindes split this sum evenly.

Under this arrangement, Kielmeyer attempted to find out-of-state insurance agents to place the trucking applications that TSI sent to him. In February, Kielmeyer contacted Ronald Allen, an Indiana insurance agent. Kielmeyer sent Allen approximately six to eight trucking applications for placement with insurance companies. Allen proceeded to place them until he received information from an insurance company indicating that the applications might not be legitimate. He then wrote Kielmeyer a letter dated March 8, 1987, in which he told Kielmeyer not to send him anymore applications.

In March, Kielmeyer contacted Robert Koch, an insurance agent in Virginia. Kielmeyer asked Koch to place three trucking applications for insurance. After Koch placed the third application, he "became aware of the fact there was something untoward here." It is not clear whether Koch ever voiced his concerns to Kielmeyer.

Also in March, Kielmeyer asked Walter Turner, an Illinois insurance agent, to place three trucking applications. After submitting two applications, Turner did some investigating which led him to question the veracity of the second application. Turner called Kielmeyer to voice his concerns. He also wrote a letter to Kielmeyer dated April 22, 1987, in which he stated: "We have come to the conclusion that this type of business will not fit within our agency structure. We see several problems cropping up including improper filings, gaps in coverage, and a financial risk to this agency due to possible bad checks." [2]

On March 23, before Kielmeyer received Turner's letter, Hindes sent TSI the following correspondence:

> Effective immediately I wish to terminate all transactions concerning your long haul truck business.
>
> The reason being we have had several complaints from companies regarding discrepancy in the number of units insured opposed to the number of units owned. We have asked you and the insureds repeatedly to provide us with the information on the nonowned lease units and I feel that this has been ignored. I truly do not understand the entire concept and until it is clarified I would rather not be involved. Please do not take this personally.

On March 30, agents of the Federal Bureau of Investigation (FBI) executed a search warrant at TSI's Destin offices and proceeded to shut down the operation.

## PROCEDURAL HISTORY

On April 13, 1989, a grand jury in the Northern District of Florida returned a seventy-count indictment charging eleven defendants with: racketeering (18 U.S.C. § 1961(1)(C) and (D)); mail fraud (18 U.S.C. § 1341); wire fraud (18 U.S.C. § 1343); and interstate transportation of stolen property (18 U.S.C. § 2314). Kielmeyer was charged in eleven of the seventy counts. He was the only defendant not to be charged with the racketeering violations.

Trial commenced on January 7, 1991. During the trial, the government moved to dismiss one of the eleven counts alleged against Kielmeyer. On February 22, the

---

**2.** In addition to Kielmeyer's efforts with Allen, Koch, and Turner, Hindes solicited an out-of-state agent by the name of James Suwstalae. Apparently, Suwstalae also had concerns about the legitimacy of the applications and thus sent a letter to Hindes dated as early as February 4, in which he stated: "We don't want to place any more."

jury convicted Kielmeyer on the remaining ten counts: six counts of mail fraud; three counts of interstate transportation of stolen property; and one count of wire fraud. Kielmeyer then moved for a judgment of acquittal. The district court denied his motion. On April 10, the district court sentenced Kielmeyer to two years probation and a $500 special monetary assessment.

## CONTENTIONS

Kielmeyer contends that the evidence failed to show that he knowingly engaged in any fraudulent activity. Thus, the government has failed to prove an essential element of the charged offenses.

The government responds that the jury reasonably inferred from the evidence that Kielmeyer knew the applications contained false information and that he therefore intended to participate in the fraudulent scheme. Thus, the element of knowledge and intent has been satisfied and the convictions should stand.

## ISSUE

The issue for review is whether the evidence presented at trial sufficiently proved that Kielmeyer knowingly and intentionally engaged in mail fraud, wire fraud, and the interstate transportation of stolen property.

## DISCUSSION

■ To establish that Kielmeyer committed mail fraud, the government had to prove that he: (1) intentionally participated in a scheme to defraud; and (2) used the mails to further that scheme. 18 U.S.C. § 1341; *United States v. Wingate*, 997 F.2d 1429, 1432 (11th Cir.1993). Likewise, in order to establish that Kielmeyer committed wire fraud, the government had to prove that he: (1) intentionally participated in a scheme to defraud; and (2) used wire communications to further that scheme. 18 U.S.C. § 1343; *Belk v. United States*, 868 F.2d 1208, 1211 (11th Cir.1989) ("The wire fraud statute tracks the language of the mail fraud statute ... The statutes are given a similar con-

struction and are subject to the same substantive analysis."). "A conviction under 18 U.S.C. § 2314 requires '(1) knowledge that certain property has been stolen or obtained by fraud, and (2) transporting it, or causing it to be transported, in interstate commerce.'" *United States v. Hartley*, 678 F.2d 961, 986 (11th Cir.1982), *cert. denied*, 459 U.S. 1170, 103 S.Ct. 815, 74 L.Ed.2d 1014 (1983) (quoting *Pereira v. United States*, 347 U.S. 1, 9, 74 S.Ct. 358, 363, 98 L.Ed. 435 (1954)). Thus, in order to convict Kielmeyer of these three crimes, the government had to show that he knew of and intended to participate in TSI's fraudulent scheme.

■ Kielmeyer contends that the evidence was insufficient to establish culpable knowledge and intent. He claims that he did not know TSI was sending him applications containing fraudulent information and that he had no reason to doubt the veracity of such information. Furthermore, Kielmeyer argues that as soon as he received information regarding possible impropriety, he and Hindes terminated business with TSI.

■ Kielmeyer's contention that the record contains insufficient "evidence to support the jury's verdict is a question of law that we review *de novo*." *United States v. Harris*, 20 F.3d 445, 452 (11th Cir.1994). However, we "must view the evidence in the light most favorable to the government." *United States v. Camargo–Vergara*, 26 F.3d 1075, 1078 (11th Cir.1994); *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Furthermore,

It is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, provided that a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt. A jury is free to choose among the constructions of the evidence.

*Harris*, 20 F.3d at 452 (quoting *United States v. Bell*, 678 F.2d 547, 549 (5th Cir. Unit B 1982) (*en banc*), *aff'd on other grounds*, 462 U.S. 356, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983)).[3] "If, however, the rec-

---

**3.** In *Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir.1982), this court adopted all post-

ord reveals a lack of substantial evidence from which a fact-finder could find guilt beyond a reasonable doubt, we must reverse the defendant's conviction." *United States v. Harris,* 20 F.3d at 452.

Upon reviewing the record under these standards, we find that the evidence did not sufficiently support Kielmeyer's conviction. The government essentially makes three unavailing arguments in support of its position that Kielmeyer knew TSI was providing false insurance applications and that he therefore intended to participate in the fraudulent scheme.

First, the government argues that the three out-of-state insurance agents (Allen, Koch, and Turner) quickly realized the misleading nature of the applications and therefore the fraud must have been obvious to Kielmeyer. The record simply does not support this conclusion. Turner placed two applications before he realized something was wrong. Koch realized something was wrong after three applications. Finally, Allen placed as many as six to eight applications before he realized something was wrong. This certainly does not suggest that the fraudulent nature of the information was apparent from the face of the applications. Instead, after placing several applications, all three out-of-state agents learned of possible improprieties in the middle of March, at about the same time things started to fall apart for TSI.

The government also argues that the evidence shows that after the out-of-state agents recognized the fraudulent nature of the applications, they immediately notified Kielmeyer; thus, Kielmeyer had actual notice of the fraud and continued to knowingly engage in the scheme. The evidence does not support this argument. Kielmeyer was first informed of the possible fraudulent nature of TSI's applications when he received Allen's letter dated March 8.[4] Kielmeyer

terminated his relationship with TSI through Hindes's letter of March 23, a mere two weeks later. This evidence simply does not establish that Kielmeyer knowingly engaged in TSI's fraudulent scheme for a sustained period of time. Instead, Kielmeyer severed all ties immediately after he was alerted to potential impropriety.

The government finally argues that the evidence showed that Kielmeyer was so intimately involved with TSI that the jury properly inferred that he must have known about the fraudulent operation. The government claims that this intimate relationship was manifested through evidence that Kielmeyer: 1) was on TSI's payroll; 2) had a TSI business card; and 3) made three to five trips to TSI headquarters. With regard to the first two facts, we fail to see how being on the payroll and having a business card can possibly impute culpable knowledge to Kielmeyer. The evidence of the trips to TSI's headquarters, however, is more relevant when considering knowledge. Nonetheless, the government presented no evidence as to what was said or what transpired on these trips. Indeed, detailed evidence was presented of Hindes's trip to Destin in which the officers of TSI duped him into thinking they were running a legitimate operation. Nothing in this record suggests that Kielmeyer was not a similar victim to TSI's machinations when he visited. In sum, these three facts, even when taken together, only show that Kielmeyer worked for TSI. They do not sufficiently show that Kielmeyer had knowledge of the fraudulent scheme.

## CONCLUSION

Thus, we affirm the convictions and judgments of all appellants, except Kielmeyer. For the reasons stated, we reverse his conviction.

---

September 30, 1981 decisions of Unit B of the former Fifth Circuit as binding precedent.

4. The testimony does not clearly indicate whether Koch ever notified Kielmeyer of potential impropriety. Turner notified Kielmeyer over the phone, but it is not clear when he did so. He also sent Kielmeyer a letter dated April 22, well after Kielmeyer terminated his relationship with

TSI. In addition, testimony indicated that as early as February 4, an out-of-state agent named James Suwstalae informed Hindes: "We don't want to place any more." The testimony, however, does not sufficiently indicate what Suwstalae told Hindes and whether this information ever reached Kielmeyer.

AFFIRMED in part and REVERSED in part.