[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 13, 2003
THOMAS K. KAHN
CLERK

_____

No. 01-15989

_____

D.C. Docket No. 97-00508-CR-2-1-MHS

UNITED STATES OF AMERICA,

Plaintiff-Appellee
Cross-Appellant,

versus

RICHARD POIRIER, JR.,
MICHAEL DEVEGTER,

Defendants-Appellants
Cross-Appellees.

_____

Appeals from the United States District Court
for the Northern District of Georgia

_____

(February 13, 2003)

Before ANDERSON and CARNES, Circuit Judges, and POLLAK*, District
Judge.

_____

* Honorable Louis H. Pollak, United States District Judge for the Eastern District of
Pennsylvania, sitting by designation.

CARNES, Circuit Judge:

Defendants Michael deVegter and Richard Poirier, Jr. were convicted of wire fraud and conspiracy as a result of evidence that they participated in a scheme to defraud Fulton County, Georgia. In this appeal they challenge the sufficiency of the indictment, the sufficiency of the evidence against them, and the correctness of the jury instructions. Their arguments primarily center around their contention that Fulton County was not actually defrauded of "money and property," and for that reason their wire fraud convictions and the conspiracy convictions based upon the same prosecutorial theory cannot stand. DeVegter also challenges his sentence, arguing that the district court should not have applied the enhancement for abusing a position of trust. For reasons we will explain, we find no merit in the defendants' contentions.

The government, on the other hand, cross-appeals the sentences given both defendants on a variety of grounds, and its contentions do have merit.

## I. BACKGROUND

Defendants deVegter and Poirier were indicted for their roles in corrupting the process by which Fulton County selected an underwriter for a bond refunding project. Fulton County hired deVegter to serve as its independent financial advisor as it solicited and evaluated proposals from competing underwriters.

2

Poirier was a partner with Lazard Freres & Co. (the Lazard firm), which eventually was awarded the underwriting contract. In exchange for deVegter's covert assistance in ensuring that the Lazard firm's proposal was selected, Poirier through an intermediary paid deVegter over $40,000.00. A grand jury subsequently indicted both deVegter and Poirier, charging them with three offenses: conspiracy to commit wire fraud in violation of 18 U.S.C. § 371; money-and-property wire fraud in violation of 18 U.S.C. § 1343; and honest-services wire fraud in violation of 18 U.S.C. § 1346.[1]

The jury returned a verdict finding both defendants guilty of conspiracy and of § 1343 wire fraud. It did not reach a verdict on the § 1346 honest services charge.

## II. DISCUSSION

### A. THE CONVICTIONS ISSUES

#### 1. The Sufficiency of the Indictment

Defendants contend that the indictment was insufficient to support a conviction for § 1343 wire fraud, an issue we review de novo. United States v. Pendergraft, 297 F.3d 1198, 1204 (11th Cir. 2002). "Generally, an indictment is

---

[1]In a prior opinion in this case, we reversed the district court's dismissal of the § 1346 charge. United States v. DeVegter, 198 F.3d 1324 (1999). That opinion details the allegations of the indictment more than we have here. Id. at 1326.

3

sufficient if it: 1) sets forth the elements of the offense in a manner which fairly informs the defendant of the charge against which he must defend and 2) enables him to enter a plea which will bar future prosecution for the same offense." Belt v. United States, 868 F.2d 1208, 1211 (11ᵗʰ Cir. 1989) (citing Hamling v. United States, 418 U.S. 87, 117, 94 S. Ct. 2887, 2907 (1974)). "A grand jury indictment must set forth each essential element of an offense in order for a resulting conviction to stand." United States v. Italiano, 837 F.2d 1480, 1482 (11ᵗʰ Cir. 1988) (quoting United States v. Outler, 659 F.2d 1306, 1310 (5ᵗʰ Cir. Unit B Oct. 1981) overruled on other grounds by United States v. Steele, 147 F.3d 1316, 1320 (11th Cir. 1998) (en banc)). The elements of a § 1343 wire fraud violation are: (1) intentional participation in a scheme to defraud; and (2) use of wire communications to further that scheme. United States v. Brown, 40 F.3d 1218, 1221 (11ᵗʰ Cir. 1994).

The defendants argue that the indictment was insufficient because it failed to specify the money or property Fulton County was deprived of. The indictment alleged that defendants "did knowingly and willfully devise and intend to devise a scheme and artifice to defraud Fulton County, Georgia, and its citizens of money and property and the good, faithful and honest services of defendant Michael deVegter." (emphasis added). In addition, the indictment specifically referred to

4

§§ 1343 and 1346, the money and property and the honest services wire fraud provisions, respectively. Other parts of the indictment made it evident that the property involved was certain confidential information.

According to the indictment, deVegter "had a duty not to disclose confidential information received in his capacity as a financial advisor without Fulton County's permission." The indictment specified that while supposedly in the service of Fulton County, deVegter faxed a copy of Fulton County's early draft request for proposal to Poirier, and he later faxed a copy of its nearly-final draft request for proposal to a third party, who in turn faxed it to Poirier. In addition, the indictment alleged that deVegter obtained a copy of the proposal submitted by one of the Lazard firm's competitors, which he faxed to Poirier. The point of the allegations was that deVegter was entrusted with Fulton County documents, which he improperly transferred to Poirier in return for money.

Although the indictment did not expressly allege that the documents deVegter obtained and transferred were confidential, "[w]hen analyzing challenges to the sufficiency of an indictment, courts give the indictment a common sense construction, and its validity is to be determined 'by practical, not technical, considerations.'" United States v. Gold, 743 F.2d 800, 812 (11th Cir. 1984) (quoting United States v. Morano, 697 F.2d 923, 927 (11th Cir. 1983)). Common

5

sense tells us that the documents listed in the indictment constituted confidential information.  Anyone with a modicum of understanding about bidding processes knows that those kind of documents are confidential.  Moreover, the indictment's charge that the conduct violated § 1343 also indicates that they were.

Of course, the government could have avoided this issue altogether by simply saying in the indictment that the documents were confidential, but "the appropriate test . . . is not whether the indictment might have been drafted with more clarity, but whether it conforms to minimal constitutional standards."  United States v. Varkonyi, 645 F.2d 453, 456 (5th Cir. Unit A May 1981)).  "Minor deficiencies that do not prejudice the defendant will not prompt this Court to reverse a conviction."  United States v. Chilcote, 724 F.2d 1498, 1505 (11th Cir. 1984).  In other words, we do not punish a party for unnecessarily making us decide an issue by deciding that issue against the party.

Defendants also contend that even apart from the question of the adequacy of the allegations about confidentiality, the indictment was insufficient because the specified documents did not constitute property and therefore could not support a § 1343 wire fraud conviction.  In McNally v. United States, 483 U.S. 350, 107 S. Ct. 2875 (1987), the Supreme Court held that wire and mail fraud statutes protect only property rights, and that the words "to defraud," as used in the

6

statutes, "usually signify the deprivation of something of value by trick, deceit, chicane or overreaching." Id. at 358, 107 S. Ct. at 2881 (quoting Hammerschmidt v. United States, 265 U.S. 182, 188, 44 S. Ct. 511, 512 (1924)) (internal quotation marks omitted).[2] With its McNally decision the Court overturned a line of cases that permitted wire fraud convictions based on deprivation of intangible rights like the right to honest services. Id. at 355-56, 107 S. Ct. at 2879.[3]

Shortly after McNally, the Supreme Court elaborated on the scope of § 1343 in Carpenter v. United States, 484 U.S. 19, 108 S. Ct. 316 (1987). In that case the Court affirmed convictions stemming from the fraudulent misappropriation of pre-publication Wall Street Journal articles. Id. at 28, 108 S. Ct. at 321-22. In rejecting the contention that the defendants had not defrauded the Journal of money or property by disclosing and using the information in the stories before publication, the Court explained that "[t]he Journal, as [one of the defendant's] employer, was defrauded of much more than its contractual right to his honest and

---

[2]The convictions in McNally were based on § 1341 mail fraud, not § 1343 wire fraud. McNally, 483 U.S. at 352, 107 S. Ct. at 2877. The McNally decision is nonetheless instructive because "[t]he mail and wire fraud statutes share the same language in relevant part." Carpenter v. United States, 484 U.S. 19, 25 n.6, 108 S. Ct. 316, 320 n.6 (1987).

[3]Congress responded to McNally by amending the mail fraud statute to include § 1346, which defines "the term 'scheme or artifice to defraud' [to] include[] a scheme or artifice to deprive another of the intangible right of honest services." 18 U.S.C. § 1346; see also Belt, 868 F.2d at 1212 n.4. Because the jury in this case was unable to reach a verdict on the § 1346 charge, this appeal involves only the § 1343 money or property fraud charge.

7

faithful service." Id. at 25, 108 S. Ct. at 320. Indeed, "the object of the scheme was to take the Journal's confidential business information . . . and its intangible nature does not make it any less 'property' protected by the mail and wire fraud statutes. McNally did not limit the scope of § 1341 to tangible as distinguished from intangible property rights." Id., 108 S. Ct. at 320.

In this case Fulton County was involved in a competitive bidding process involving confidential information that, like the information in Carpenter, had commercial value. Fulton County had an interest in keeping its draft requests for proposals confidential until they were issued, and it had an interest in keeping submitted bids confidential until all of them had been received. Otherwise, the bidding process could become corrupted. As the Supreme Court noted, "[c]onfidential business information has long been recognized as property." Carpenter, 484 U.S. at 26, 108 S. Ct. at 320. The object of the scheme in this case, like the one in Carpenter, was to take the victim's confidential information by disclosing it early to those who could profit from that disclosure. And "its intangible nature does not make it any less 'property.'" Id. at 25, 108 S. Ct. at 320.

The Carpenter decision alone is enough to carry our conclusion, but there is further support for it in our case law. In Belt, we reinstated a conviction on facts

8

that are similar. The defendant in that case pleaded guilty to § 1343 wire fraud prior to the Supreme Court's decision in McNally. Belt, 868 F.2d at 1210. The indictment alleged that by accepting bribes from companies bidding on subcontracts, Belt had defrauded his employer and deprived it of his honest services. Id. According to the indictment, Belt provided competing companies with secret bid information and other confidential documents. Id. After McNally was decided, the district court overturned Belt's conviction, concluding that the indictment was insufficient in view of McNally's property deprivation requirement. Id. at 1210 n.2. We reversed the district court's decision for reasons that are equally applicable to this case:

> [T]he petitioner released confidential business information of his employer to third parties. In exchange for bribes, Belt released business information regarding the subcontractor bids submitted . . . which made the bids submitted higher than they normally would have been. We see little difference in the character of the confidential information involved in this case and that involved in Carpenter. In both cases, the confidentiality of the information was integral to the proper operation of the employer's business and to its reputation. Thus, although the scheme did not cause [Belt's employer] a direct monetary loss, like the information in Carpenter, the confidential information constituted an intangible property right protected under § 1343.

Id. at 1213.

For these reasons, the indictment in this case sufficiently alleged a deprivation of money and property under § 1343.[4]

## 2. The Correctness of the Jury Instructions

Defendants contend that even if the indictment were sufficient, the convictions should be overturned because the jury instructions were improper. According to defendants, the language in the instructions allowed the jury to return a guilty verdict upon finding nothing more than a financial gain to defendants. We review jury instructions only for an abuse of discretion. Roberts & Schaefer Co. v. Hardaway Co., 152 F.3d 1283, 1295 (11th Cir. 1998).

The jury instructions explained that proof the defendants acted willfully and with the intent to defraud was essential to a guilty verdict. The instructions defined the necessary intent as follows: "To act with intent to defraud means to act knowingly and with the specific intent to deceive someone, ordinarily for the purpose of causing some financial loss to another or bringing about some financial gain to one's self." (emphasis added). Defendants contend that the "or" in that definition improperly allowed the jury to convict based only on a finding of

---

[4]As alternative theories, the government contends that the bonds themselves were property and that the increased spread Fulton County paid on the bids was property. Because we find that the indictment sufficiently alleged a deprivation of property in the form of confidential information, we need not reach the government's alternative theories.

10

financial gain to defendants. The language they focus on, though, defines intent. Cf. United States v. De La Mata, 266 F.3d 1275, 1299 n.30 (11th Cir. 2001) (affirming bank fraud conviction where identical words were used to define intent to defraud). It does not define the offense itself. A complete reading of the instructions makes clear that a finding of financial gain alone is insufficient for a conviction. The jury instructions in this case adequately laid out the elements of money or property wire fraud:

> A defendant can be found guilty of [§ 1343 wire fraud] only if all of the following facts are proved beyond a reasonable doubt. First, that the defendant knowingly devised or participated in a scheme to defraud or for obtaining money or property by means of false pretenses, representations or promises. Second, that the defendant did so willfully and with an intent to defraud. Third, that the fraud related to a material matter. And, fourth, that the defendant [used wire communications].

After receiving that charge, the jury returned its verdict by checking "Guilty" under "Scheme to defraud Fulton County of money and property" on the special verdict form. "On appeal, we examine whether the jury instructions and verdict form, considered as a whole, were sufficient 'so that the jurors understood the issues and were not misled.'" McNely v. Ocala Star-Banner Corp., 99 F.3d 1068, 1072 (11th Cir. 1996) (quoting Wilkinson v. Carnival Cruise Lines, Inc., 920 F.2d 1560, 1569 (11th Cir. 1991)). We do not focus on any single sentence in jury

instructions because, "[i]f the instructions, taken together, properly express the law applicable to the case, no reversible error has occurred, even if an isolated clause may be inaccurate, ambiguous, incomplete, or otherwise subject to criticism." Busby v. City of Orlando, 931 F.2d 764, 776 (11th Cir. 1991). Having read the instructions as a whole and in conjunction with the verdict form, we are satisfied that the jury did not convict based solely upon a finding of financial gain for the defendants.

### 3. The Sufficiency of the Evidence

Defendants contend there was insufficient evidence to sustain their convictions for money and property wire fraud, which is an issue we decide de novo. United States v. Suba, 132 F.3d 662, 671 (11th Cir. 1998). We review the evidence to determine whether "a reasonable jury, viewing the evidence and all reasonable inferences therefrom in the light most favorable to the government could find the defendant[s] guilty as charged beyond a reasonable doubt." United States v. Navarro-Ordas, 770 F.2d 959, 966 (11th Cir. 1985) (internal citations omitted).

The government presented evidence that deVegter had a duty to keep Fulton County's bidding documents confidential. The request for proposal to which deVegter responded in landing his position as financial advisor unequivocally

12

stated that "[n]o reports, information, or data given to or prepared by the firm under the contract shall be made available to any individual or organization by the firm without the prior written approval of the County." There was evidence showing that deVegter accepted those terms, and therefore knew of his confidentiality obligation. The government also presented evidence that during the underwriter selection process, deVegter disclosed drafts of the request for proposal relating to that process to the Lazard firm. Defendants contend that the drafts were not confidential because they were comprised of public boilerplate provisions. The evidence, however, permitted the jury to find to the contrary. Fulton County's finance director testified that the request for proposal was "customized" for Fulton County and contained specific numerical assumptions unique to Fulton County's project. Besides, even if the drafts had contained only public provisions, the County's decision about which public provisions to include could itself constitute confidential information.

In addition to disclosing drafts of Fulton County's request for proposal before its release, there was evidence that deVegter forwarded Poirier a copy of a proposal submitted by Bear Stearns, a competitor of the Lazard firm. According to a government witness, Fulton County treated all proposals submitted, including the Bear Stearns proposal, as confidential until the selection was made public. The

reasons the County wanted them kept confidential are obvious, and deVegter even admitted on cross examination that it would have been improper for him to disclose the Bear Stearns proposal to another competitor. He denied doing so, but there was plenty of evidence that he had faxed that proposal to the Lazard firm's office. Further, because the jury did not believe deVegter, his demeanor while testifying may be considered substantive evidence of his guilt. See United States v. Brown, 53 F.3d 312, 314 (11th Cir. 1995).

Poirier's involvement in the scheme is also demonstrated by the evidence. The government presented testimony that Poirier was concerned that his firm was not in a good position to win the underwriting contract. His concern led him to authorize the payment to deVegter in exchange for deVegter's improper assistance. There was evidence that deVegter's improper and corrupt assistance aided Poirier in obtaining the contract for his firm.

In sum, the government presented evidence that deVegter had access to confidential documents, had a duty to protect them, and improperly disclosed them to Poirier and others. The evidence also demonstrated that Poirier authorized the

14

illicit payment to deVegter in exchange for deVegter's assistance. There was

sufficient evidence for a jury to convict deVegter and Poirier.[5]

## B.  THE SENTENCE ISSUES

DeVegter contends that even if his conviction stands, his sentence should

not because the district court erroneously applied the U.S.S.G. § 3B1.3

enhancement for abuse of a position of trust.  His argument is based on the fact

that he did not have the authority to make the final decision in Fulton County's

awarding the underwriting business to the Lazard firm.  That fact is not

determinative.  Fulton County hired deVegter to serve as a fair and unbiased

financial advisor and put him in a position to do that.  With that position came

Fulton County's trust, and deVegter clearly abused it.  The enhancement for

abusing a position of trust was appropriate.

The government has cross-appealed contending that the district court: (1)

applied the wrong guideline, and if not, that it incorrectly determined loss under

U.S.S.G. § 2F.1.1(b)(1), and should have imposed the § 2F1.1(b)(2) more than

minimal planning enhancement; (2) should have imposed the obstruction of justice

---

[5]Defendants contend that their conspiracy convictions are based on their wire fraud convictions and should be reversed if those convictions are.  Perhaps so, but we affirm the wire fraud convictions.

15

enhancement under § 3C1.1; and (3) should have imposed on Poirier an enhancement based on his leadership role under § 3B1.1.

### 1. The Applicable Guideline

In sentencing the defendants the district court applied as the base offense guideline § 2F1.1, which covers offenses involving fraud or deceit. The government contends it should have applied § 2B4.1, which covers commercial bribery and kickbacks. We review <u>de novo</u> the district court's application of the law to the facts. <u>United States v. Geffrard</u>, 87 F.3d 448, 452 (11th Cir. 1996).

The offense conduct in this case is § 1343 wire fraud.[6] The Statutory Index lists two possible guidelines for that offense, §§ 2C1.7 & 2F1.1. U.S.S.G. appendix A. We agree with the parties that § 2C1.7 is inapplicable, which leaves § 2F1.1. The application of § 2F1.1 leads us to yet another guideline, because Application Note 14 to § 2F1.1 specifically allows for use of other guidelines in some circumstances. It says: "[i]n certain . . . cases, the mail or wire fraud statutes, or other relatively broad statutes, are used primarily as jurisdictional

---

[6]The defendants were also convicted of conspiracy to commit wire fraud. Under the sentencing guidelines, the two counts of conviction are grouped, and the more serious one is used for determining the offense conduct. <u>See</u> U.S.S.G. §§ 3D1.2(b) & n.4, 3(a). Here, that is the wire fraud count.

16

bases for the prosecution of other offenses." U.S.S.G. § 2F1.1 n.14.[7] In those cases, a court should use another guideline if "the indictment or information setting forth the count of conviction . . . establishes an offense more aptly covered by another guideline." Id.; see also United States v. Kurtz, 237 F.3d 154, 156 (2d Cir. 2001) ("[W]hen sentencing a defendant . . . under the 2000 version of the Guidelines, the district court is to look to § 2F1.1; and that section, as explicated in Application Note 14, gives the court express authority to apply a different guideline that is 'more apt[].'").[8] Thus, the question is whether defendants'

[7]We follow the Application Note because commentary to the guideline is authoritative and binding unless it is inconsistent with the Constitution, a federal statute, or the guidelines themselves. Stinson v. United States, 508 U.S. 36, 37, 113 S. Ct. 1913, 1915 (1993).

[8] Until November 2000, the Statutory Index included the following language: "If, in an atypical case, the guideline section indicated for the statute of conviction is inappropriate because of the particular conduct involved, use the guideline section most applicable to the nature of the offense conduct charged in the count of which the defendant was convicted." U.S.S.G. Appendix A (1999). Dropping that language was part of an effort "intended to emphasize that the sentencing court must apply the offense guideline referenced in the Statutory Index for the statute of conviction unless the case falls within the limited 'stipulation' exception set forth in § 1B1.2(a)." U.S.S.G. Amendment 591 (explanation). The amendment left in place Application Note 14 to § 2F1.1 allowing courts to apply a different guideline if the indictment or information setting forth the count of conviction established an offense "more aptly covered by another guideline." U.S.S.G. § 2F1.1 n.14.

The current guidelines merge § 2F1.1 with § 2B1.1 and abandon Application Note 14, but new § 2B1.1(c)(3) stands in its place and specifies that: "If [certain conditions are not applicable and] the conduct set forth in the count of conviction establishes an offense specifically covered by another guideline in Chapter Two (offense Conduct), [courts should] apply that other guideline." U.S.S.G. § 2B1.1(c)(3) (2002). The amendment to include § 2B1.1(c)(3):

is more generally applicable and intended to apply whenever a broadly applicable fraud statute is used to reach conduct that is addressed more specifically in

17

conduct is "more aptly" covered by a guideline other than § 2F1.1, the one for fraud or deceit.

As we have already explained, Fulton County hired deVegter to provide fair and disinterested assistance in selecting an underwriter, and deVegter betrayed Fulton County. In exchange for payment through an intermediary, he gave confidential documents to Poirier which improperly assisted Poirier's firm in the proposal process. We conclude that the defendants' "conduct more closely resembled a fraud achieved through bribery than a straight fraud," United States v. Montani, 204 F.3d 761, 769 (7th Cir. 2000), and for that reason the § 2B4.1 guideline applies. Our conclusion is supported by other decisions in which courts have applied the commercial bribery guideline to fraud convictions. See, e.g., id. (§§ 1341 and 1346 mail fraud convictions sentenced under § 2B4.1); United States v. Cohen, 171 F.3d 796 (3d Cir. 1999) (§ 1341 mail fraud conviction sentenced under § 2B4.1); United States v. Josleyn, 99 F.3d 1182 (1st Cir. 1996) (conspiracy and § 1341 convictions sentenced under § 2B4.1).

---

another Chapter Two guideline. Prior to this amendment, the fraud guideline contained an application note [14] that instructed the user to move to another, more appropriate Chapter Two guideline, under specified circumstances.

U.S.S.G. Amendment 617. For purposes of this appeal, we will apply the 2000 version of the guidelines because it was in effect at the time of sentencing and the version in effect at the time of the offense conduct is not more favorable to the defendants. U.S.S.G. § 1B1.11.

The defendants attempt to distinguish Montani on the basis that they, unlike the defendant in that case, were not convicted of § 1346 honest services fraud. According to deVegter, "the hallmark of commercial bribery is the deprivation of honest services." It is certainly true that accepting or providing bribes is inconsistent with the delivery of honest services, but that is not to say that the commercial bribery guideline cannot also be applied to a § 1343 money and property wire fraud case. The defendants' conduct in giving and receiving money in exchange for the misappropriation of documents is "more aptly" covered by the commercial bribery guideline than by the fraud guideline.

Our decision in United States v. Saavedra, 148 F.3d 1311 (11th Cir. 1998), is not to the contrary. In that case the Statutory Index to the sentencing guidelines listed only one guideline for the offense conduct. Id. at 1315. That guideline contained no applicable cross-references to other guidelines, but the sentencing court nevertheless applied a different guideline. Id. at 1313. We vacated the sentence because "[t]here is no provision in the guidelines for borrowing base offense levels from other offense guidelines." Saavedra, 148 F.3d at 1316.

In contrast to Saavedra, applying § 2B4.1 in this case does not constitute unauthorized "borrowing . . . from other offense guidelines," because "[o]nce the proper guideline section has been selected, relevant conduct is considered in

19

determining various sentencing considerations <u>within that guideline</u>, <u>including</u> the base offense level, specific offense characteristics, and <u>any cross-references</u>." <u>Id.</u> at 1317 (citing U.S.S.G. § 1B1.3(a)) (emphasis added). We get to § 2B4.1 by applying § 2F1.1, which is the guideline specifically associated with the offense conduct. Application Note 14 of § 2F1.1 is essentially a cross reference that sends us to § 2B4.1. We are not improperly "borrowing . . . from other offense guidelines," but instead are applying the offense guideline and its Application Note.

For these reasons, the sentencing court should have reached and applied § 2B4.1 to determine the defendants' base offense level. We will remand for correction of that error.

Because we conclude that § 2F1.1 was not the correct guideline, we need not consider the government's contentions that the sentencing court incorrectly determined loss under § 2F1.1, and that it should have imposed that guideline's more than minimal planning enhancement.

### 2. The Obstruction of Justice Enhancement

The sentencing guidelines provide for an increased sentence if a defendant "willfully obstructed or impeded . . . the administration of justice during the course of the investigation, prosecution, or sentencing." U.S.S.G. § 3C1.1. The

20

government contends that the district court erred in not enhancing defendants' sentences under this provision.

We review a district court's determination about whether a defendant obstructed justice only for clear error, United States v. Cain, 881 F.2d 980, 982 (11th Cir. 1989), and "[w]e will not find clear error unless our review of the record leaves us 'with the definite and firm conviction that a mistake has been committed,'" Coggin v. Commissioner, 71 F.3d 855, 860 (11th Cir. 1996) (quoting United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S. Ct. 525, 542 (1948)). That high standard is met in this case.

The record clearly establishes that both defendants obstructed justice. They each provided false testimony to the Securities and Exchange Commission in an effort to conceal their conduct. In addition, each of them encouraged another person to provide false testimony. DeVegter tried to convince Nat Cole, a middleman in the scheme, to sign a false affidavit, and Poirier persuaded a colleague of his at the Lazard firm, Jim Eaton, to lie to the SEC. Finally, deVegter provided false testimony at trial and stubbornly maintained his incredible testimony that the money he received was for legitimate, unrelated consulting engagements. In the face of all this evidence of obstruction, the sentencing court, without further explanation, simply said: "I find there is no willful attempt by

21

either defendant to obstruct the investigation, nothing in the defendants' conduct that would warrant an obstruction adjustment, so there will be no enhancement." We are left with the definite and firm conviction that the sentencing court should have applied the enhancement for obstruction of justice to both defendants. Its inexplicable finding that the defendants did not obstruct justice is clearly erroneous, and must be corrected on remand.

### 3. The Aggravating Role Enhancement for Poirier

The guidelines provide for an enhancement where a defendant was an organizer, leader, manager, or supervisor in the criminal activity. U.S.S.G. § 3B1.1. A two-level increase in the offense level is required "[i]f the defendant was an organizer, leader, manager, or supervisor in any criminal activity" and the offense did not "involve[] five or more participants or was otherwise extensive" (in which case a three- or four-level increase would be required). U.S.S.G. § 3B1.1(c), (b). In this case the sentencing court declined to enhance either defendant's sentence for an aggravating role. The government accepts that decision as it involves deVegter, but contends that the enhancement should have been applied in Poirier's case.

We review only for clear error a sentencing court's decision about whether to impose an aggravating role enhancement. United States v. Phillips, 287 F.3d

1053, 1055 (11th Cir. 2002). The evidence at trial established that Poirier supervised Jim Eaton at the Lazard firm, and that he authorized the corrupt payoff to a person who passed half the money on to deVegeter. To qualify for an increase under § 3B1.1, "the defendant must have been the organizer, leader, manager, or supervisor of one or more other participants." U.S.S.G. § 3B1.1 n.2. The evidence at trial read in light of the guilty verdict establishes that Eaton was a participant in the criminal activity as defined by the guidelines, id. n.1, and Poirier was his superior, his supervisor, and his manager. The district court did not find to the contrary, but instead simply and inexplicably failed to apply the enhancement. That was clear error. On remand the § 3B1.1(c) enhancement must be applied to Poirier.

## III. CONCLUSION

The convictions of deVegter and Poirier are AFFIRMED. The sentencing decisions of the district court are AFFIRMED IN PART and REVERSED IN PART, and the case is REMANDED to the district court for resentencing. At resentencing, the court must apply in both cases the § 2B4.1 offense guideline and the obstruction of justice enhancement, and in Poirier's case it must apply the § 3B1.1(c) aggravating role enhancement.