[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
October 11, 2005
THOMAS K. KAHN
CLERK

_____

No. 05-10603
Non-Argument Calendar

_____

D. C. Docket No. 04-60087-CR-DMM

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MILDRED CRUZ-NATAL,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(October 11, 2005)

Before BIRCH, BARKETT and HULL, Circuit Judges.

PER CURIAM:

After pleading guilty, Mildred Cruz-Natal appeals her 72-month sentence for

conspiring to defraud the government by filing false Medicare claims, in violation of 18 U.S.C. § 286. After review, we affirm the district court's imposition of all sentencing enhancements except for the enhancement under U.S.S.G. § 3B1.3 (2000).[1] Because the district court improperly imposed the enhancement under § 3B1.3, and thus did not properly calculate the defendant's Guidelines range, we vacate Cruz-Natal's 72-month sentence and remand for resentencing.

## I. BACKGROUND

Defendant Cruz-Natal defrauded the United States Department of Health and Human Services ("HHS") by submitting false claims for medical equipment to Medicare. Cruz-Natal submitted the false claims through two corporations, namely, Supportive Health Services ("Supportive") and S&B, Inc. ("S&B"). At Cruz-Natal's direction, Alejandro Vigoreaux acted as the nominee owner of Supportive, opened a bank account in Supportive's name, and funneled the money to Cruz-Natal. In addition, Cruz-Natal recruited her brother-in-law, Carlos Ravelo, to serve as the nominee owner of S&B. Ravelo also funneled money to the defendant. Cruz-Natal and codefendant Rodolfo Frescobaldi were responsible for submitting the false claims to Medicare.

From September 3, 1998, through December 5, 2000, Supportive submitted

---

[1]All citations are to the 2000 version of the Guidelines.

false claims in the sum of $449,799.28 and received reimbursements from Medicare totaling $203,767.75. During the same time span, S&B submitted fraudulent claims totaling $2,104,120.42 and received $877,946.66 in reimbursements from Medicare. All the fraudulent claims indicated that Dr. Frednesvinda Gonzalez was the referring physician.

As stated above, Cruz-Natal eventually plead guilty to conspiracy to defraud the government with respect to Medicare claims, in violation of 18 U.S.C. § 286.

During Cruz-Natal's sentencing hearing, the district court stated that under United States v. Booker, 125 S. Ct. 738 (2005), it was required to consider the resulting Guidelines range, but was able to deviate from that range upon the consideration of other relevant factors. After stating that it had considered the parties' statements, the PSI, the objections, and other factors such as the seriousness of the crime and the need to protect the public, the district court stated that the Guidelines range of 70-87 months' imprisonment was reasonable, and that it would sentence Cruz-Natal within that range. The district court sentenced Cruz-Natal to 72 months' imprisonment, 3 years' supervised release, and restitution totaling $1,081,714.41.

## II. DISCUSSION

After Booker, and even under an advisory Guidelines scheme, district courts

3

must still correctly calculate the Guidelines range when determining a defendant's sentence. See United States v. Crawford, 407 F.3d 1174, 1178 (11th Cir. 2005) (stating that after Booker, district courts must consult the Guidelines and "[t]his consultation requirement, at a minimum, obliges the district court to calculate correctly the sentencing range prescribed by the Guidelines"). Thus, even though the district court sentenced Cruz-Natal post-Booker, we still must review whether the district court properly calculated the defendant's Guidelines range. See id.

On appeal, Cruz-Natal challenges several enhancements the district court imposed when calculating her Guidelines range. Specifically, Cruz-Natal argues that the district court improperly: (1) calculated the amount of loss suffered by Medicare under U.S.S.G. § 2F1.1(b)(1)(N); (2) applied a two-level enhancement under § 2F1.1(b)(2) because the offense involved more than minimal planning; (3) applied a four-level enhancement pursuant to § 3B1.1(a) for acting as an organizer or leader of a criminal activity that involved five or more participants; and (4) applied a two-level enhancement under § 3B1.3 for use of a special skill in the commission of the offense.

## A.    Loss Amount Under § 2F1.1(b)(1)(N)

On appeal, Cruz-Natal argues that the district court improperly calculated

the amount of loss as $2,553,919.70.[2] This Court reviews a district court's determination of the amount of loss involved in an offense for clear error. United States v. Nostari-Shamloo, 255 F.3d 1290, 1291 (11th Cir. 2001).

In this case, the district court determined that the correct calculation of the amount of loss was the amount that Cruz-Natal and her co-conspirators intended to recover from Medicare. That amount, as alleged in the indictment and stated in the PSI, was $2,553,919.70. Cruz-Natal asserts that she should be held accountable for only the $1,081,714.41 actually paid by Medicare.

However, according to the commentary to U.S.S.G. § 2F1.1, if the intended loss is calculable and is greater than the actual loss, the district court should base the amount of loss for which the defendant is responsible on the intended loss amount. U.S.S.G. § 2F1.1, cmt. n.8 ("[I]f an intended loss that the defendant was attempting to inflict can be determined, this figure will be used if it is greater than the actual loss."). Because the intended loss is easily calculated and greater than the actual loss in this case, the district court did not clearly err in relying on the $2,553,919.70 the defendant intended on receiving from Medicare.

**B.    Minimal Planning Pursuant to § 2F1.1(b)(2)**

Cruz-Natal also argues that the district court erroneously determined that her

---

[2]Under U.S.S.G. § 2F1.1(b)(1)(N), an offense involving an amount of loss of at least $2,500,000 warrants a 13-level increase in the base offense level.

offense of conviction required more than minimal planning.[3]  A finding by a district court as to whether an offense involved more than minimal planning is reviewed for clear error.  Crawford, 407 F.3d at 1177.  This Court "cannot find clear error unless [it is] left with a definite and firm conviction that a mistake has been committed."  Id. (quotation marks omitted).

This Court has concluded that a presumption of more than minimal planning arises when the government establishes that the offense involved a series of repeated acts over a period of time.  Id. at 1180.  "If, for example, several fraudulent transactions occur over a period of two years, more than minimal planning will be deemed present unless it is clear that each one of the several transactions was purely opportune."  Id.

In this case, Cruz-Natal pled guilty to a scheme to defraud the government from September 1998 through December 2000.  Over this period of more than two years, Cruz-Natal filed the necessary paperwork so that Supportive and S&B could be used in the fraudulent scheme, recruited nominee owners of both corporations, directed others to open bank accounts for the purpose of depositing the

---

[3]If a fraud offense involved more than minimal planning, the Guidelines require a two-level increase in the base offense level.  U.S.S.G. § 2F1.1(b)(2)(A).  "'More than minimal planning' means more planning than is typical for commission of the offense in a simple form. . . .  [It] is deemed present in any case involving repeated acts over a period of time, unless it is clear that each instance was purely opportune."  U.S.S.G. § 1B1.1, cmt. n.1(f).

6

reimbursements received from Medicare, and filed numerous false claims to Medicare. The record does not indicate, and Cruz-Natal does not argue, that any act was purely opportune. See id. (holding that an act is purely opportune if it is "spur of the moment conduct, in response to a sudden fortuitous opportunity of which the defendant took advantage without deliberation" (quotation marks omitted)). Accordingly, the district court's determination that Cruz-Natal's conspiracy offense involved more than minimal planning was not clearly erroneous.

## C. Organizer or Leader Pursuant to § 3B1.1(a)

A defendant's offense level may be increased by four levels "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(a).[4] With regard to this four-level enhancement under § 3B1.1(a), Cruz-Natal makes two arguments, which we address in turn.

First she asserts that the district court erred in imposing an enhancement under § 3B1.1(a) because there were only four participants involved in the

---

[4]The factors that a sentencing court considers in determining whether an enhancement under § 3B1.1(a) is warranted are: "(1) exercise of decision-making authority, (2) nature of participation in the commission of the offense, (3) recruitment of accomplices, (4) claimed right to a larger share of the fruits of the crime, (5) degree of participation in planning or organizing the offense, (6) nature and scope of the illegal activity, and (7) degree of control and authority exercised over others." United States v. Vallejo, 297 F.3d 1154, 1169 (11th Cir. 2002) (citing U.S.S.G. § 3B1.1, cmt. n.4).

conspiracy offense, namely, herself, Frescobaldi, Ravelo, and Vigoreaux, she was not an organizer of an offense involving at least five "participants."[5] The Guidelines define "participant" as "a person who is criminally responsible for the commission of the offense, but need not have been convicted." U.S.S.G. § 3B1.1, cmt. n.1; see United States v. Rendon, 354 F.3d 1320, 1332 (11th Cir. 2003), cert. denied, 541 U.S. 1035, 124 S. Ct. 2110 (2004).

In this regard, the district court concluded that Dr. Gonzalez, while not indicted for the conspiracy, was criminally culpable because she would have had knowledge that her requests for the medical equipment, for which Supportive and S&B sought reimbursement, were not legitimate. Cruz-Natal does not dispute this finding. Because Cruz-Natal does not dispute the district court's finding that Dr. Gonzalez was involved in the conspiracy, the district court was not clearly erroneous in determining that the conspiracy in question involved five "participants."

Second, Cruz-Natal argues that the district court erroneously enhanced her sentence because she was not a leader or organizer of the conspiracy.[6] However,

---

[5]A district court's decision whether to impose an aggravating role enhancement pursuant to § 3B1.1(a) is reviewed for clear error. United States v. Poirier, 321 F.3d 1024, 1036 (11th Cir. 2003).

[6]Cruz-Natal did not raise this argument before the district court. Where the claim or argument is raised for the first time on appeal, we review for plain error only. United States v. Rodriguez, 398 F.3d 1291, 1298 (11th Cir. 2005) (concluding that where a defendant raises on

8

Cruz-Natal admitted to recruiting members of the conspiracy and directing some of their actions. This Court has recognized that "[t]he defendant does not have to be the sole leader or kingpin of the conspiracy in order to be considered an organizer or leader within the meaning of the Guidelines." United States v. Vallejo, 297 F.3d 1154, 1169 (11th Cir 2002). Furthermore, a defendant does not have be a leader or organizer of all five participants for an enhancement under U.S.S.G. § 3B1.1; that is, the enhancement is warranted if the defendant was a leader or organizer of only one of the other participants. See United States v. Yeager, 331 F.3d 1216, 1226 (11th Cir. 2003). Based on Cruz-Natal's admissions that she recruited members of the conspiracy and directed some of their actions, it was not error, plain or otherwise, for the district court to conclude that Cruz-Natal was an organizer or leader of the conspiracy.

For all the above reasons, we conclude that the district court properly applied the four-level enhancement under § 3B1.1(a).

## D. Use of a Special Skill Pursuant to § 3B1.3

Section 3B1.3 provides for a two-level enhancement "[i]f the defendant . . . used a special skill[] in a manner that significantly facilitated the commission or

---

appeal an issue not objected to in the district court, this Court reviews for plain error and will reverse only if (1) an error, (2) that is plain, (3) affects substantial rights, and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings), cert. denied, 125 S. Ct. 2935 (2005).

concealment of the offense." U.S.S.G. § 3B1.3. Although an accountant, Cruz-Natal argues that no special skills were required to commit her offense and, thus, the district court erroneously applied a two-level enhancement pursuant to § 3B1.3. We need not address the specifics of Cruz-Natal's argument because § 3B1.3 provides that the enhancement for use of a special skill is <u>unavailable</u> if the defendant has already received an enhancement for being a leader or organizer under § 3B1.1(a). <u>See</u> U.S.S.G. § 3B1.3 ("[I]f this adjustment is based solely on the use of a special skill, it may not be employed in addition to an adjustment under § 3B1.1."). Because Cruz-Natal received a four-level enhancement under § 3B1.1(a) for being a leader or organizer, she should not have received a two-level enhancement under § 3B1.3 for use of a special skill.

Because Cruz-Natal should not have received a two-level enhancement under § 3B1.3, the district court erred in calculating her Guidelines range as 70-87 months' imprisonment. Thus, we vacate the defendant's 72-month sentence and remand this case for resentencing without this two-level enhancement. We, however, affirm the district court's imposition of all other enhancements in this case, which result in an adjusted base offense level of 24 and a Guidelines range of 57-71 months' imprisonment (with a Criminal History Category II).

Thus, on remand, the district court is required to sentence Cruz-Natal under

10

an advisory Guidelines regime, and shall consider the Guidelines range of 57-71 months' imprisonment and "other statutory concerns as well, <u>see</u> [18 U.S.C.] § 3553(a) (Supp. 2004)." <u>Booker</u>, 125 S. Ct. at 757.[7]

VACATED and REMANDED WITH INSTRUCTIONS.

---

[7]We do not mean to suggest by our holding that the district court must impose any particular sentence on remand. We also do not attempt to decide now whether a particular sentence on remand might be reasonable in this case.