[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-15333
Non-Argument Calendar
_____

D.C. Docket No. 1:13-cr-20741-BB-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

RICARDO ELOI,
STANLEY FLEURANT,

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Southern District of Florida

_____

(June 10, 2016)

Before ED CARNES, Chief Judge, MARTIN and ANDERSON, Circuit Judges.

PER CURIAM:

On the evening of May 15, 2013, Eric Rivera was sitting in a parked car in front of his mother's house. Ricardo Eloi approached the car, pulled out a gun, and ordered Rivera out of the vehicle. After taking Rivera's phone, Ricardo Eloi told him to open the trunk. As Rivera complied, Ricardo Eloi's fellow assailants, Stanley Fleurant and Ricky Eloi,[1] came out of the shadows. Together, the three men attempted to push Rivera into the trunk of his car. When Rivera resisted and pleaded to be let go in exchange for his money and other personal items, Ricky Eloi hit him over the head with a gun and one of the three said, "just shoot him already." As Ricardo Rivera heard the click of a gun, the police arrived and his assailants fled. The police quickly apprehended all three in the surrounding neighborhood and recovered the gun used in the attack.

For their involvement in the May 15 incident, Fleurant and Ricardo Eloi were charged with attempted carjacking, in violation of 18 U.S.C. § 2119, and brandishing a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A).[2] Ricardo Eloi pleaded guilty to both counts. Fleurant proceeded to trial. At the close of the government's case-in-chief, Fleurant moved for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29 on the ground that the evidence was insufficient to sustain a conviction for attempted

---

[1] Ricardo Eloi and Ricky Eloi are brothers.

[2] Fleurant and Ricardo Eloi were charged with two additional counts relating to another carjacking that took place on May 5, 2013. Both Fleurant and Ricardo Eloi proceeded to trial on those counts and the jury acquitted them of both.

2

carjacking.  The district court denied that motion and the jury found him guilty of both counts.  The district court imposed consecutive sentences on Fleurant of 108 months for attempted carjacking and 84 months for brandishing a firearm.  It imposed consecutive sentences on Ricardo Eloi of 180 months for attempted carjacking and 84 months for brandishing a firearm.

Fleurant and Ricardo Eloi both appealed.  Fleurant challenges his conviction and sentence, while Ricardo Eloi challenges only his sentence.  Fleurant contends that the district court erred in denying his motion for a judgment of acquittal because the evidence was insufficient to establish guilt beyond a reasonable doubt.  Both Fleurant and Ricardo Eloi contend that their sentences are unreasonable.

## I.

Fleurant first contends that the district court erred in denying his motion for a judgment of acquittal.  Rule 29 provides that "the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction."  Fed. R. Crim. P. 29(a).  We review de novo the district court's denial of a Rule 29 motion.  United States v. Willner, 795 F.3d 1297, 1307 (11th Cir. 2015).  In doing so, "[w]e resolve all reasonable inferences and credibility evaluations in favor of the jury's verdict and ask whether any reasonable juror could have found [the defendant] guilty beyond a reasonable doubt."  Id.

3

18 U.S.C. § 2119 makes it a crime for one "with the intent to cause death or serious bodily harm [to] take[ ] a motor vehicle that has been transported, shipped, or received in interstate or foreign commerce from the person or presence of another by force and violence or by intimidation, or [to] attempt[ ] to do so." See also United States v. Diaz, 248 F.3d 1065, 1096 (11th Cir. 2001) (enumerating the elements of carjacking under § 2119). Fleurant argues that the evidence does not establish that he attempted to "take" Rivera's car. He asserts, for example, that he and his fellow assailants never demanded the car, they never entered the car, and they never attempted to take Rivera's car key, which presumably would have been necessary to take the car itself. As a result, Fleurant says, the evidence shows only that he attempted to take Rivera's personal belongings, not his car.

Viewing the evidence in the light most favorable to the government, as we must, the evidence was sufficient to establish that Fleurant attempted to take Rivera's car. A reasonable jury could conclude from the circumstances that taking Rivera's phone and putting him in the trunk of his car was merely a prelude to taking the car itself, which was interrupted by the arrival of police. That conclusion is bolstered by the fact that Fleurant and his fellow assailants never demanded Rivera's money or other possessions, aside from the phone, and even ignored Rivera's offers to give them anything he had. Accordingly, the district court did not err in denying Fleurant's motion for a judgment of acquittal.

4

## II.

Fleurant next contends that his sentence is substantively unreasonable.  We review the reasonableness of a sentence for abuse of discretion and the defendant bears the burden of showing that that the sentence is unreasonable.  United States v. Kuhlman, 711 F.3d 1321, 1326 (11th Cir. 2013).  When imposing a sentence, the district court must consider the factors set forth in 18 U.S.C. § 3553(a).  "A district court abuses its discretion when it (1) fails to afford consideration to relevant factors that were due significant weight, (2) gives significant weight to an improper or irrelevant factor, or (3) commits a clear error of judgment in considering the proper factors."  United States v. Campa, 459 F.3d 1121, 1174 (11th Cir. 2006) (en banc).

Fleurant argues that the district court failed to appropriately consider two § 3553(a) factors:  first, "the nature and circumstances of the offense and the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1); and second, "the need to avoid unwarranted sentence disparities," id. § 3553(a)(6).  Fleurant maintains that the court failed to consider his limited role in the carjacking as well as other potentially mitigating personal characteristics, which resulted in an unwarranted disparity between his sentence and the sentence of his codefendant, Ricky Eloi.  Fleurant received a 108-month sentence with respect to his conviction

5

for attempted carjacking, while Ricky Eloi received a 57-month sentence for the same conviction.

We have stated that "there can be no 'unwarranted' sentencing disparities among codefendants who are not similarly situated." United States v. Azmat, 805 F.3d 1018, 1048 (11th Cir. 2015); see also United States v. Regueiro, 240 F.3d 1321, 1325–26 (11th Cir. 2001) ("Disparity between the sentences imposed on codefendants is generally not an appropriate basis for relief on appeal."). For example, a difference in sentences is not unwarranted "when a cooperating defendant pleads guilty and receives a lesser sentence than a defendant who proceeds to trial." United States v. Langston, 590 F.3d 1226, 1237 (11th Cir. 2009). That is true "even when a cooperating defendant receives a 'substantially shorter' sentence than a defendant who goes to trial." United States v. Cavallo, 790 F.3d 1202, 1237 (11th Cir. 2015). Codefendants are also not similarly situated when they have different criminal histories. See United States v. Holt, 777 F.3d 1234, 1270 (11th Cir. 2015).

Ricky Eloi and Fleurant received different sentences, but they were not similarly situated. Ricky Eloi pleaded guilty, while Fleurant proceeded to trial. Their different criminal histories also led to different offense levels and different sentencing ranges under the guidelines. Because they were not similarly situated,

6

the difference in sentences was not unwarranted.  See Langston, 590 F.3d at 1237;

Cavallo, 790 F.3d at 1237.

## III.

Like Fleurant, Ricardo Eloi contends that his sentence is unreasonable.  He

first challenges the district court's two-level enhancement for obstruction of justice

under U.S.S.G. § 3C1.1, which served as the basis for the court's denial of a two-

level decrease for acceptance of responsibility.  "We review a district court's

determination about whether a defendant obstructed justice only for clear error and

we will not find clear error unless our review of the record leaves us with the

definite and firm conviction that a mistake has been committed."  United States v.

Poirier, 321 F.3d 1024, 1035 (11th Cir. 2003) (quotation marks, citations, and

alterations omitted).  The sentencing guidelines list as an example of obstructing

justice "providing materially false information to a judge or magistrate judge."

U.S.S.G. § 3C1.1 cmt. n.4(F).  The guidelines further define "material"

information as information that, "if believed, would tend to influence or affect the

issue under determination."  Id. § 3C1.1 cmt. n.6.  For sentencing purposes, "the

threshold for materiality is conspicuously low."  United States v. Dedeker, 961

F.2d 164, 167 (11th Cir. 1992).

At his change of plea hearing, Ricardo Eloi told the magistrate judge that he

did not possess a firearm during the offense.  At sentencing, the district court found

7

that statement was materially false because he had possessed a gun during the offense. Ricardo Eloi does not now dispute that his statement was false. He asserts only that the statement was not material because it would not have affected the magistrate judge's decision to accept or reject his change of plea. But the statement would have been relevant to other judicial determinations, such as sentencing, and it would, if believed, have tended to affect those determinations. So it was material. See United States v. Campa, 529 F.3d 980, 1017 (11th Cir. 2008) (finding that a sentence adjustment "was appropriate whether or not significant hindrance occurred" when the defendant provided false information to a magistrate judge at a detention hearing). The district court did not err in applying an enhancement for obstruction of justice and denying a decrease for acceptance of responsibility.

Ricardo Eloi next contends that the district court erred in imposing a five-level enhancement under U.S.S.G. § 2B3.1(b)(3) based on the severity of his victim's injury. "The severity of a victim's injuries is a factual determination and thus reviewed for clear error." United States v. Price, 149 F.3d 352, 353 (5th Cir. 1998). The guidelines provide for a four-level enhancement when the victim sustains a serious bodily injury, a six-level enhancement when the victim sustains a permanent or life-threatening injury, and a five-level enhancement when the victim sustains an injury that falls between serious bodily injury and permanent bodily

8

injury.  U.S.S.G. § 2B3.1(b)(3)(B), (C), (E).  For sentencing purposes, "serious bodily injury" includes "injury involving extreme physical pain or . . . requiring medical intervention."  U.S.S.G. § 1B1.1 cmt. n.1(L).  By contrast, "permanent bodily injury" includes "an obvious disfigurement that is likely to be permanent," id. § 1B1.1 cmt. n.1(J), and "encompasses injuries that may not be terribly severe but are permanent," United States v. Torrealba, 339 F.3d 1238, 1246 (11th Cir. 2003) (quotation marks omitted).

The district court imposed a five-level enhancement based on its finding that the victim, Rivera, suffered an injury that fell between serious bodily injury and permanent bodily injury.  When Ricardo Eloi and his co-assailants attacked Rivera, they hit him in the head with a gun.  The resulting laceration required Rivera to go to the hospital where he received stiches that left a scar.  Based on photographic evidence as well as its own observation of Rivera in court a year after the attack, the district court determined that the scar constituted a permanent disfigurement. Based on the record before us, we cannot say the district court clearly erred in making that determination or imposing the five-level enhancement under U.S.S.G. § 2B3.1(b)(3)(E).  To the contrary, based on the district court's findings, it conceivably might have been within its discretion to impose a six-level enhancement for permanent bodily injury under U.S.S.G. § 2B3.1(b)(3)(C), but we need not decide that.

9

Finally, Ricardo Eloi argues that the district court did not properly consider the sentencing factors enumerated in 18 U.S.C. § 3553(a). Like Fleurant, he argues that the district court's improper weighing of the § 3553(a) factors resulted in an unwarranted disparity between his sentence and the sentences of his codefendants. See 18 U.S.C. § 3553(a)(6). With respect to the attempted carjacking conviction, Ricardo Eloi received a sentence of 180 months, Fleurant received a sentence of 108 months, and Ricky Eloi received a sentence of 57 months.

As we have already explained, however, a difference in the sentences of codefendants is not unwarranted when they are not similarly situated. See Azmat, 805 F.3d at 1048; Langston, 590 F.3d at 1237. The codefendants here were not similarly situated. The district court found that Ricardo Eloi, unlike his codefendants, had obstructed justice by providing a materially false statement to a magistrate judge. The district court also considered his violent criminal history, which involved assaults and weapons, that was not shared by his codefendants. See Holt, 777 F.3d at 1270. Because Ricardo Eloi was not similarly situated to his codefendants, any sentencing disparity was not unwarranted.

Ricardo Eloi also asserts that the district court improperly weighed the § 3553(a) factors by considering acquitted conduct related to a previous carjacking for which he was charged. To begin with, the district court may consider acquitted

10

conduct "so long as that conduct has been proved by a preponderance of the evidence." United States v. Watts, 519 U.S. 148, 157, 117 S. Ct. 633, 638 (1997); see also United States v. Faust, 456 F.3d 1342, 1347–48 (11th Cir. 2006). In this case, however, we don't have to get that far because there is no indication that the district court considered the acquitted conduct in reaching its sentencing decision. To the contrary, the transcript from the sentencing hearing indicates that the district court refrained from considering the acquitted conduct on the ground that "there was an issue with regard to misidentification, and that was clear from the jury's verdict [of acquittal]." We therefore find no error.

**AFFIRMED.**